UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

MAURICE SEYMORE,                          :

                    Plaintiff,     :     12 Civ. 6870 (GBD)(HBP)

     -against-                      :     REPORT AND
                                          RECOMMENDATION
THE CITY OF NEW YORK, et al.,       :

                    Defendants.    :

-----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE GEORGE B. DANIELS, United States

Magistrate Judge,


I.   Introduction


          Plaintiff, a former pretrial detainee who was housed in

the New York City Department of Corrections' ("DOC's") George R.

Vierno Center ("GRVC"), commenced this action pro se pursuant to

42 U.S.C. § 1983 alleging that his First Amendment right to the

free exercise of his religion were violated when Ramadan services

were either cancelled or curtailed[1] in July and August 2012.

---

[1]It is not clear from plaintiff's submissions whether he is
alleging that Ramadan services were cancelled entirely or whether
the services were abbreviated in a manner that, according to
plaintiff, was inconsistent with Islamic beliefs.

All defendants, except Imam John Pridgen, who has not been served and who has not appeared in this action, move to dismiss the amended complaint on the ground that plaintiff has not exhausted the remedies available to him under DOC's Inmate Grievance Resolution Program ("IGRP") (Docket Item 25 & 26). For the reasons set forth below, I respectfully recommend that the moving defendants' motion be granted. I also recommend mea sponte that the action also be dismissed as to Imam Pridgen.

II. Facts

Read leniently, the amended complaint alleges the following facts.

Plaintiff, who is apparently a member of the Muslim faith, was incarcerated in the GVRC in from at least June through August 2012. Beginning on either June or July 27, 2012,[2] defendants allegedly cancelled or curtailed congregate religious services marking the Isalmic religious holiday of Ramadan. The precise role and personal involvement of each defendant is not clearly delineated in plaintiff's submissions. Plaintiff alleges that this conduct was not only a violation of the free exercise

---

[2]The Amended Complaint inconsistently alleges that defendants' wrongful conduct commenced on both dates (Amended Complaint, dated Dec. 12, 2012 (Docket Item 11)("Am. Compl.") at § II, ¶¶ C, D).

rights guaranteed by the First Amendment to the United States Constitution, he also alleges that it was an act of discrimination against members of the Muslim faith in violation of the Fourteenth Amendment (Am. Compl. at page 9[3]).  Plaintiff seeks more than $14 million in compensatory and punitive damages (Plaintiff's "Notice of Motion to Compel Defendants [sic] Motion to Dismiss,"[4] dated May 31, 2013 (Docket Item 21) ("Plaintiff's Opp.") at 14).

Plaintiff alleges that he filed a grievance concerning the cancellation of Ramadan services with Deborah Moultrie, who plaintiff describes as the "Grievance Coordinator" (Am. Compl. at 10).  Plaintiff states that his grievance was "never resolve[d]" and in response to the question on the form complaint inquiring whether plaintiff appealed any adverse decision in the grievance process, plaintiff states only that he requested a hearing but that his request was never granted (Am. Compl. at 10).

---

[3]Plaintiff utilized the Court's form Prisoner Civil Rights Complaint to file his Amended Complaint.  However, in addition to completing the pre-printed form, plaintiff has inserted several unnumbered, handwritten pages after page 2 of the form.  My citations to page numbers refer to the page numbers assigned to the document by the Court's ECF system that appear on the upper right corner of each page.

[4]This document appears to be plaintiff's opposition to the motion to dismiss.

In his opposition to the motion, plaintiff elaborates
on his efforts to exhaust his remedies under the IGRP as follows:

> City of New York, & Grievance Coordinator Ms.
> Deborah Moultrie in her official and individual capaci-
> ties was responsible to insure that all grievance have
> hearing and are file timely.  She purposely withheld
> grievance and spearhead the investigation about the
> Ramadan cancellations, she knew or should have known
> that her office was responsible to attempt to resolve
> any filed grievances, she's place a substantial burden
> by not filing or conducting hearings concerning the
> cancellation of the Ramadan services more than 10
> Grievance Complaints was file for unlawful cancella-
> tions and she knew by not having a hearing that the
> reports would stall <u>all</u> proceedings.  As Coordinator of
> the Grievance Program her duties is to make sure every
> Grievance Complaint be answer and file with all parties
> pertaining to the complaint, instead she withheld and
> spearhead the investigation by not filing the necessary
> paperwork to resolve the issues.  For that she's de-
> prived and place a substantial burden on resolving the
> complaints.  By her direct knowledge concerning the
> Grievant Complaint she's was directly involve in spear-
> heading the investigation by days of not following
> grievance proceeding/procedures/standards and Guide-
> lines.  Her deprivations make her liable under 1983 for
> violations of ones First Amendment Freedom of Speech,
> and to utilize the grievance process as the plaintiff
> protective right to file any complaints concerning him.
> Her knowledge make her liable under official and indi-
> vidual capacities for her substantial burden towards
> the plaintiff.  Therefore, the court should deny any
> motion to dismiss.

(Plaintiff's Opp. at 10-11 (spelling and grammatical errors and
emphasis in original)).  Plaintiff nowhere resolves the inconsis-
tency resulting from his simultaneously claiming that Moultrie
both delayed processing his grievance and "spearhead[ed]" the
investigation of his charges.

4

Plaintiff also claims that he sent grievances to defendant Pridgen which Pridgen allegedly "downplayed" (Plaintiff's Opp. at 12).   Plaintiff does not explain what he means by this contention.   Finally, plaintiff also alleges that he wrote to the Commissioner of the DOC concerning the alleged violation of his free-exercise rights (Am. Compl. at 11).

III.   Analysis

    A.   Standards Applicable to
       Motion to Dismiss
       Pursuant to Rule 12(b)(6)

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review.

> In [assessing a motion under Rule 12(b)(6), the Court must] accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  [Kirkendall v. Halliburton, Inc., 707 F.3d 173, 178 (2d Cir. 2013)].  To survive [the] motion, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); Kirkendall, 707 F.3d at 178-79.  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  While pro se complaints must contain sufficient factual allegations to meet the plausibility standard, see Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), we afford a pro se litigant "special solici-

tude." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

Allen v. Norman, Docket No. 12-3780-cv, 2013 WL 6670681 at *1 (2d Cir. Dec. 19, 2013) (summary order).

Where, as here, a plaintiff proceeds pro se, the complaint must be liberally construed to raise the strongest claims that the allegations suggest. Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). This rule applies "with particular stringency to [pro se] complaints of civil rights violations." Phillip v. Univ. of Rochester, 316 F.3d 291, 293-94 (2d Cir. 2003). In addition, although a Court in addressing a 12(b)(6) motion is ordinarily limited to the complaint, any annexed exhibits, documents that are integral to the claims and judicially notice-able facts, see N.Y. Life Ins. Co. v. United States, 724 F.3d 256, 258 n.1 (2d Cir. 2013), where as here, the plaintiff is proceeding pro se, the Court may also consider the plaintiff's opposition to the motion as a supplement to the complaint. Williams v. Wellness Medical Care, P.C., 11 Civ. 5566 (KMK), 2013 WL 5420985 at *1 n.1 (S.D.N.Y. Sept. 27, 2013) (Karas, D.J.).

Although a pro se complaint should not ordinarily be dismissed without granting leave to amend, leave to amend is not

necessary when it would be futile.  See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

    B.   Defendants' Motion to Dismiss

       Defendants argue that the amended complaint should be dismissed because plaintiff has failed to exhaust his administrative remedies.

      1.  Applicable
          Legal Principles

       The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'"  Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009), quoting Porter v. Nussle, 534 U.S. 516, 532 (2002).  In addition, the PLRA applies to claims asserted by pretrial detainees as well as sentenced prisoners.  See United States v. Al-Marri, 329 F. Supp. 2d 366,

367-68 (S.D.N.Y. 2002) (Marrero, D.J.); <u>Rivera v. State of New
York</u>, 96 Civ. 7697 (RWS), 1999 WL 13240 at *4-*5 (S.D.N.Y. Jan.
12, 1999) (Sweet, D.J.).  Exhaustion is mandatory "regardless of
the fit between a prisoner's prayer for relief and the adminis-
trative remedies possible." <u>Booth v. Churner</u>, 532 U.S. 731, 739
(2001).  "Section 1997(e) requires 'proper exhaustion' -- that
is, 'using all steps that the agency holds out, and doing so
properly.'" <u>Amador v. Andrews</u>, 655 F.3d 89, 96 (2d Cir. 2011),
<u>quoting</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 90 (2006).

Exhaustion is an affirmative defense, and a plaintiff
is not required to plead or demonstrate exhaustion in a com-
plaint.  <u>Jones v. Bock</u>, 549 U.S. 199, 212 (2007).  Nonetheless,
if it appears from the face of the complaint that a plaintiff has
failed to exhaust his administrative remedies, or that non-
exhaustion is otherwise apparent, a court may decide the issue of
exhaustion on a Rule 12(b)(6) motion.  <u>See</u> <u>Pani v. Empire Blue
Cross Blue Shield</u>, 152 F.3d 67, 74 (2d Cir. 1998) (an affirmative
defense may be raised in a Rule 12(b)(6) motion without resort to
summary judgment if the defense appears on the face of the
complaint); <u>Flowers v. City of New York</u>, 668 F. Supp. 2d 574, 578
(S.D.N.Y. 2009) (McMahon, D.J.) ("[D]ismissal for failure to
state a claim is appropriate where, on the face of the complaint,
plaintiff states that he did not exhaust."); <u>McCoy v. Goord</u>, 255

F. Supp. 2d 233, 250-52 (S.D.N.Y. 2003) (Chin, D.J.) ("If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted.").

The procedure for exhaustion is not defined by the PLRA, but rather by the rules of the facility or jurisdiction in which the inmate-plaintiff is incarcerated.  Espinal v. Goord, supra, 558 F.3d at 124.  Inmates at GRVC, which is a DOC facility, must follow the steps set forth in the DOC's IGRP.[5]  Myers v. City of New York, 11 Civ. 8525 (PAE), 2012 WL 3776707 at *4 (S.D.N.Y. Aug. 29, 2012) (Engelmayer, D.J.), citing Espinal v. Goord, supra, 558 F.3d at 124.  This requires an inmate to:  "(1) file a complaint with the Inmate Grievance Review Committee and request a formal hearing, (2) appeal to the facility Warden or his designee, (3) appeal to the DOC Central Office Review Committee, and (4) appeal to the New York City Board of Correction."  Bush v. Horn, 07 Civ. 3231 (RJS)(FM), 2010 WL 1712024 at *3 (S.D.N.Y. Mar. 2, 2010) (Mass, M.J.) (Report & Recommendation), citing DOC Directive 3375 R-A, dated May 13, 2008, available at http://nyc.gov/html/doc/downloads/

---

[5]I take judicial notice of the procedures associated with the IGRP.  Martin v. City of New York, 11 Civ. 600 (PKC)(RLE), 2012 WL 1392648 at *5 n.2 (S.D.N.Y. Apr. 20, 2012) (Castel, D.J.) (citing cases).

pdf3375R-A.pdf ("DOC Directive");[6] accord Johnson v. Agros, 10
Civ. 8312 (PAE), 2012 WL 3564028 at *4 (S.D.N.Y. Aug. 20, 2012)
(Engelmayer, D.J.); Ramrattan v. New York City Dep't of Corr., 11
Civ. 3059 (SAS), 2012 WL 3135629 at *2 (S.D.N.Y. Aug. 2, 2012)
(Scheindlin, D.J.); Jones v. Rikers Island Care Custody, 07 Civ.
10414 (RWS), 2010 WL 148616 at *1 (S.D.N.Y. Jan. 14, 2010)
(Sweet, D.J.); Antrobus v. Dep't of Corr., 07 Civ. 2076 (JSR),
2009 WL 773277 at *4 (S.D.N.Y. Mar. 24, 2009) (Rakoff, D.J.)
(adopting Report & Recommendation of Fox, M.J.).  An inmate must
exhaust all levels of the IGRP to meet the exhaustion require-
ment.  Prince v. Latunji, 746 F. Supp. 2d 491, 495 (S.D.N.Y.
2010) (Marrero, D.J.); Jones v. Rikers Island Care Custody,
supra, 2010 WL 148616 at *2.

> The IGRP provides for specific time frames for
> each level of the grievance process.  If an inmate does
> not receive a response within these specified time
> frames, he must appeal to the next level of the process

---

[6]Although the IGRP has been amended since the events giving
rise to plaintiff's claim in a manner that appears to establish a
unique grievance procedure for "grievances of a religious
nature," this amended directive, DOC Directive 3376, dated
September 10, 2012, available at http://www.nyc.gov/html/doc/
downloads/pdf/Directive_3376_Inmate_Grievance_Request_Program.pdf
, was not in effect as of the date of the alleged events giving
rise to plaintiff's claim.  See also DOC Directive 3261 entitled
"Access to Religious Programs & Practices," dated September 10,
2012, available at http://www.nyc.gov/html/doc/downloads/pdf/
Directive_3261_Access_Religious_Programs_Services.pdf.  For the
convenience of the reader, copies of DOC Directives 3261, 3375R-A
and 3376 are annexed hereto.

> in order to properly exhaust his administrative reme-
> dies.  See Jones v. Meckley, No. 07 Civ. 10414 (RWS),
> 2010 WL 148616, at *3-4 (S.D.N.Y. Jan. 12, 2010).  It
> is well settled that an inmate must complete all requi-
> site steps of the IGRP in order to fully exhaust his
> administrative remedies; even if he does not receive a
> response at a particular step in the proceedings, he
> must proceed in timely fashion to the next step.  See,
> e.g., Salvatierra v. Connolly, No. 09 Civ. 3722
> (SHS)(DF), 2010 WL 5480756, at *17 (S.D.N.Y. Sept. 1,
> 2010) (collecting cases), report and recommendation
> adopted, No. 09 Civ. 3722 (SHS), 2011 WL 9398 (S.D.N.Y.
> Jan. 3, 2011).

Smith v. City of New York, 12 Civ. 3303 (CM), 2013 WL 5434144 at

*7 (S.D.N.Y. Sept. 26, 2013) (McMahon, D.J.).

Under certain circumstances, a court may excuse non-

exhaustion.  Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004).  A

court will consider (1) "whether administrative remedies were in

fact 'available' to the prisoner;" (2) "whether the defendants

may have forfeited the affirmative defense of non-exhaustion by

failing to raise or preserve it or whether the defendants' own

actions inhibiting the inmate's exhaustion of remedies may estop

one or more of the defendants from raising the plaintiff's

failure to exhaust as a defense" and (3) "whether 'special

circumstances' have been plausibly alleged that justify 'the

prisoner's failure to comply with administrative procedural

requirements.'"  Hemphill v. New York, 380 F.3d 680, 686 (2d Cir.

2004) (internal citations omitted); accord Macias v. Zenk, 495

F.3d 37, 41 (2d Cir. 2007); Ruggerio v. Cnty. of Orange, 467 F.3d

11

170, 175 (2d Cir. 2006); <u>Kasiem v. Switz</u>, 756 F. Supp. 2d 570, 576 (S.D.N.Y. 2010) (Holwell, D.J.).[7]

      2.   Application of
          <u>Legal Principles</u>

     Plaintiff did not exhaust his administrative remedies. Exhaustion requires a plaintiff to pursue all levels of administrative review.  By filing only a grievance and requesting a hearing, plaintiff has only satisfied the first step of the grievance process.  "The Second Circuit does not excuse a failure to exhaust when an inmate/plaintiff admittedly did not appeal to the highest available level of administrative review and provides no justifiable explanation for his failure to do so." <u>Charles v. Gordon</u>, 12 Civ. 8332 (CM)(JCF), 2013 WL 6667632 at *3 (S.D.N.Y. Dec. 17, 2013) (McMahon, D.J.)(inner quotation marks and citations omitted); <u>accord</u> <u>Morrison v. Stefaniak</u>, 523 F. App'x 51, 52 (2d Cir. 2013) (summary order) (affirming dismissal where plaintiff failed to exhaust administrative appeals); <u>Young v. Sposato</u>,

_____

    [7]There is some uncertainty whether the exceptions to the exhaustion requirement recognized in <u>Hemphill</u> survive the Supreme Court's decision in <u>Woodford v. Ngo</u>, <u>supra</u>, 548 U.S. 81; the issue is discussed in <u>Smith v. City of New York</u>, <u>supra</u>, 2013 WL 5434144 at *9 and <u>Zappulla v. Fischer</u>, 11 Civ. 6733 (JMF), 2013 WL 1387033 at *5 (S.D.N.Y. Apr. 5, 2013) (Furman, D.J.).  I assume, without deciding, that <u>Hemphill</u> is still good law; the result would be the same even if I assumed the contrary.

No. 12-CV-2850 (JFB)(GRB), 2014 WL 109083 at *7 (E.D.N.Y. Jan. 13, 2014) (same); Ceparano v. County of Suffolk, No. 10-CV-2030 (SJF)(AKT), 2013 WL 6576817 at *6 (E.D.N.Y. Dec. 13, 2013) (same); Ghee v. Ramos, 13 Civ. 632 (RWS), 2013 WL 7018543 at *1 (S.D.N.Y. Dec. 4, 2013) (Sweet, D.J.) (same); Johnson v. Schriro, 12 Civ. 7239 (WHP), 2013 WL 5718474 at *3 (S.D.N.Y. Oct. 15, 2013) (Pauley, D.J.) (same); Antrobus v. Warden of GRVC, 11 Civ. 5128, 2012 WL 1900542 at *3 (S.D.N.Y. May 25, 2012) (Furman, D.J.) (plaintiff had failed to exhaust where he had filed a grievance but took no additional steps).

The fact that plaintiff claims he received no response to his grievance and request for a hearing does not excuse him from the obligation of exhausting his administrative appeals. Johnson v. Schriro, supra, 2013 WL 5718474 at *4; Adames v. New York City Dep't of Corr., 07 Civ. 4201 (GBD), 2008 WL 2743835 at *2 (S.D.N.Y. July 14, 2008) (Daniels, D.J.).  Nor does plain- tiff's correspondence to the Commissioner of the Department of Correction excuse his failure to exhaust.  Mateo v. Alexander, 08 Civ. 8797 (RJH)(DF), 2010 WL 431718 at *3 (S.D.N.Y. Feb. 9, 2010) (Holwell, D.J.) ("[I]nformal letters of complaint are no substi- tute for proper exhaustion in accordance with state grievance procedures.").

Finally, I have considered whether Moultrie and Pridgen's alleged conduct can excuse plaintiff's failure to exhaust and conclude that it does not.  Plaintiff's allegations concerning Moultrie border on being incomprehensible.  Read leniently, they claim, at most, that Moultrie failed to act on plaintiff's grievance.  The authorities cited above teach that, where, as here, the institution's grievance procedure expressly permits an inmate to appeal either an adverse decision or the failure to issue a decision in a timely manner, the inaction of a grievance official does not excuse a failure to pursue all appeals available.  Smith v. City of New York, supra, 2013 WL 5434144 at *7.

C.  Defendant Pridgen

Although he has not joined in the motion, I also recommend mea sponte that the action be dismissed as to defendants Pridgen.  "Because the facts and reasoning applicable to the moving defendants also appl[y] to [Pridgen, plaintiff's] complaint lack[s] an arguable basis in law or fact and [is] subject to [mea] sponte dismissal.  See 28 U.S.C. § 1915(e)(2) (stating that court 'shall dismiss' case filed by plaintiff proceeding in forma pauperis 'at any time' if it determines that action fails to state claim upon which relief may be granted) . .

14

. ."  <u>Johnson v. City of New York</u>, Docket Nos. 13-1103(L), 13-1402 (con), 2014 WL 223432 at *1 (2d Cir. Jan. 22, 2014) (summary order); <u>accord</u> <u>Mann v. Daniels</u>, 10 Civ. 7540 (PKC)(THK), 2011 WL 2421285 at *2 (S.D.N.Y. June 9, 2011) (Castel, D.J.); Bridgewater v. Taylor, 698 F. Supp. 2d 361, 361-62 (S.D.N.Y. 2010) (Marrero, D.J.).

## IV.  Conclusion

Accordingly, for all the forgoing reasons, I respectfully recommend that the complaint be dismissed as to all defendants.  I further recommend that leave to amend not be granted because it would be futile in this case.

## V.  OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  <u>See also</u> Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable George B. Daniels, United States District Judge, 500 Pearl Street, Room 1310, New York, New York 10007 and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New

15

York 10007.   Any requests for an extension of time for filing objections must be directed to Judge Daniels.   FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.   Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:  New York, New York
        January 28, 2014

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Mr. Maurice Seymore
DIN 13-A-1088
Attica Correctional Facility
Box 149
639 Exchange Street
Attica, New York  14011-0149

Serena Longley, Esq.
Assistant Corporation Counsel
City of New York
100 Church Street
New York, New York  10007

16

**APPENDIX**

415R



THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION

# DIRECTIVE

| [X] NEW   [ ] INTERIM   [ ] REVISED | SUBJECT | | | |
|---|---|---|---|---|
| **EFFECTIVE DATE** 09/10/12 | *TERMINATION DATE | **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | | |
| CLASSIFICATION # **3261** | SUPERSEDES **\*See Below\*** | DATED **\*See Below\*** | APPROVED FOR WEB POSTING [X] YES [ ] NO | DISTRIBUTION **A** | PAGE 1 OF 13 PAGES |
| RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER | | | AUTHORIZED BY THE COMMISSIONER | |
| *Michael Hourihane (signature)* | | | *Dora B. Schriro (signature)* | |
| MICHAEL HOURIHANE, CHIEF OF DEPARTMENT   SIGNATURE | | | DORA B. SCHRIRO   SIGNATURE | |

## I.  PURPOSE

This directive establishes guidelines regarding inmate access to religious programs and practices in compliance with the United States Religious Land Use and Institutionalized Persons Act (RLUIPA), the New York State Commission of Correction (SCOC) Minimum Standards, and the New York City Board of Correction (BOC) Minimum Standards.

## II.  POLICY

A.   Inmates shall have the unrestricted right to hold any religious belief and to be a member of any religious group or organization, as well as the right to refrain from the exercise of any religious beliefs.   Inmates shall be permitted to exercise their religious beliefs in any manner, provided that the exercising of such religious beliefs does not present a clear and present danger to the safety and security of the institution or disrupt the orderly administration of the institution.

B.   Department staff and religious volunteers shall not attempt or be permitted to proselytize or seek to convert an inmate or otherwise compel an inmate to become part of a religious group or organization; nor shall they attempt to dissuade an inmate from exercising his/her religious beliefs or attempt to influence an inmate to discontinue membership in any religious group or organization.

## III.  PROCEDURE

A.   SELECTION OF RELIGIOUS AFFILIATION

1.   During the admission process at a court detention facility or upon direct admission to an institution, inmates shall be asked to designate their religious affiliation.

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | |  |
| --- | --- | --- | --- | --- |
| | CLASSIFICATION # **3261** | | | |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING **[X] YES   [ ] NO** | PAGE **2** OF **13** PAGES | |

## III.   PROCEDURE (cont.)

2.   After the inmate has indicated a religious affiliation, the name of the religion shall be recorded on the Arraignment Risk and Classification Screening Form (ARC 239M) and shall also be imprinted on the Inmate's Identification Card (236AR) and other inmate records as appropriate. If the inmate elects not to indicate a religious affiliation, the records shall be noted "None" in the appropriate space provided.

3.   Once the inmate has indicated a religious affiliation, the inmate shall be recognized as being affiliated with the religion specified on the inmate's admission records.

B.   CHANGE OF RELIGIOUS AFFILIATION

1.   The Director of Ministerial Services shall track inmate changes in religious affiliation and shall monitor any patterns in changes of an inmate's religious affiliation to prevent abuse and maintain the orderly running of the Department. The Director of Ministerial Services shall report any pattern of changes or abuse to the Deputy Wardens for Programs and Security.

2.   In cases where an inmate desires to change his/her religious affiliation either to another religion or to "None," the inmate shall submit a written request with the Inmate Grievance and Request Program.  Three months after an inmate originally indicated a religious affiliation (including an indication of no religious affiliation); an inmate may submit a request to change religious affiliation.  A Department chaplain shall interview the inmate to ensure the sincerity of the inmate's request.  Subsequent to any change in religious affiliation, an inmate generally will be required to wait three months from the date of the change before submitting a new request to change religious affiliation.  Under appropriate circumstances, e.g., Department records do not properly reflect the inmate's religious affiliation or the inmate's new religious affiliation reflects a sincere change in religious beliefs, a Department chaplain may waive the three-month waiting period and approve a change of religious affiliation.

3.   Upon approval of the inmate's request to change religious affiliation, a Department chaplain shall forward notification of the change to the Director of Ministerial Services and the Deputy Warden for Programs.  The Deputy Warden for Programs shall ensure that the inmate's records are updated within two business days to reflect the approved change and that the facility issues the inmate a new Inmate Identification Card at no cost to the inmate.

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | |
|---|---|---|---|
| | CLASSIFICATION # **3261** | | |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES  [ ] NO | PAGE **3** OF **13** PAGES |



## III.   PROCEDURE (cont.)

   4.   In cases where the inmate changes religious affiliation to the Jewish or Muslim faith and the inmate elects to participate in the Kosher/Halal Meal Program, the Deputy Warden for Programs shall forward a copy of the notification to the Deputy Warden for Administration.  The Department shall ensure that any change in religious affiliation that impacts the inmate's dietary requirements are made in accordance with Directive 3250, Kosher/Halal Meal Program. However, any Jewish or Muslim inmate may opt out of the Kosher/Halal meal program without affecting his/her religious affiliation and right to attend Jewish or Muslim services.

   C.   CONGREGATE RELIGIOUS WORSHIP AND OBSERVATION OF RELIGIOUS HOLY DAYS

   1.   Ministerial Services shall schedule appropriate congregate religious services to meet the needs of inmates.  The Deputy Warden for Programs shall ensure that all inmates are notified of congregate services by posting notices in English and Spanish in each housing area.

   2.   Ministerial Services shall maintain an annual calendar (by fiscal year) of religious holy days and shall provide guidance to the facilities regarding the requirements for observance of these holy days.  Ministerial Services shall distribute a calendar to each facility no later than June 1st of the preceding fiscal year.

   3.   Ministerial Services shall schedule holy day observances and the Deputy Warden for Programs shall ensure that all inmates are notified of holy day observances by posting notices in English and Spanish in each housing area at least two weeks before the holy day of observation.

   4.   A Department chaplain or religious volunteer shall lead congregate religious services, including holy day observances.  When no chaplain or religious volunteer is available, an inmate who is a member of the particular religious group may conduct congregate religious services.

   5.   The Department shall provide appropriate space for religious services in accordance with safety and security concerns.

   6.   All inmates shall be permitted to congregate for the purpose of religious worship and other religious activities, including holy day observances, as determined by the religious affiliation indicated on the inmate's identification card, except for inmates confined for medical reasons in the Communicable Disease Unit.

416R



| EFFECTIVE DATE **09/10/12** | SUBJECT | |
|---|---|---|
| CLASSIFICATION # **3261** | **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** |  |
| DISTRIBUTION **A** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **4** OF **13** PAGES |

## III.   PROCEDURE (cont.)

7.   Ministerial Services shall coordinate with the Deputy Warden for Programs to ensure that all interested inmates are afforded the opportunity to attend holy day observances, including those inmates who must be transported from one facility to another.   The Deputy Warden for Programs shall permit inmates sufficient time off from program, school, and work assignments to attend holy day observances.

8.   Inmates housed in administrative segregation, punitive segregation or in any other special population housing category shall be permitted to attend congregate religious services, including holy day observances, either with general population inmates or within their housing unit at the Department's discretion, in accordance with the Department's custody management policies and with the implementation of appropriate security measures.

9.   The Department may deny an inmate permission to attend religious services, including holy day observances, when the inmate has been found, after following the due process procedures delineated in section IV of this directive, to pose a threat to the safety and security of the institution based on specific acts committed by the inmate during the exercise of his or her religion.

10.   If the Department must make a determination on an emergency basis to limit an inmate's exercise of religious beliefs, including denying an inmate permission to attend religious services or holy day observances (to protect that inmate or other attendees) that does not afford time to follow the procedure with adequate due process safeguards as delineated in section IV of this directive because the religious service is to occur within less than three business days, a uniformed member of service in the rank of deputy warden or above shall issue such determination in writing.   The Deputy Warden for Security shall forward such determination within 24 hours to the Board of Correction and provide a copy to the Director of Ministerial Services.

D.   RELIGIOUS ARTICLES AND LITERATURE

1.   Inmates shall be permitted to wear and possess religious articles (see Appendix A, Permissible Religious Articles - attachment A) such as religious medals, devotional prayer books, religious literature, hats, and clothing (except where uniforms are required), provided that the possession of these articles do not present a potential danger to the safety and security of the Department, as determined by the Religious Accommodations Committee.   Inmates must remain compliant with Department rules concerning the receipt and accumulation of personal property.

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT | **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** |  |
|---|---|---|---|---|
| | CLASSIFICATION # **3261** | | | |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **5** OF **13** PAGES | |

## III. PROCEDURE (cont.)

    2.    All religious articles are subject to search and inspection. Uniformed staff shall handle all religious articles with appropriate respect.

    3.    A list of approved religious articles is attached to this policy as Appendix A and shall be updated as appropriate by the Director of Ministerial Services.

E.    DIETARY CONSIDERATIONS

Inmates may refrain from eating those food items served to the general population that are contrary to their religious beliefs. Participation in the Kosher/Halal meal program is a way to meet an inmate's religious dietary needs. If an inmate seeks any other alternative diet, e.g., Glatt Kosher or vegetarian, based on religious needs, the inmate may submit a request directly to a Department chaplain or a written request to the Inmate Grievance and Request Program (see section III.F).

F.    REQUESTS FOR RELIGIOUS ACCOMMODATION

    1.    Federal law prohibits the Department from imposing a substantial burden on an inmate's religious exercise unless the burden (1) furthers a compelling Department interest such as safety or security and (2) is the least restrictive means of furthering that compelling interest.

    2.    Inmates may request to exercise religious beliefs and practices in a manner not currently permitted under Departmental policy or to conduct congregate religious services which are not currently available in the facility through the Inmate Grievance and Request Program. The facility's Grievance Supervisor shall refer requests of a religious nature to the Administrative Chaplain. The Administrative Chaplain shall, if necessary, interview the inmate. If the request can be resolved, the Administrative Chaplain shall notify the Grievance Supervisor and the Director of Ministerial Services of the resolution of the request.

If the request cannot be resolved informally, then the Director of Ministerial Services shall submit the request in writing to the Committee on Religious Accommodations. This committee shall be comprised of the Associate Commissioner for Programs and Discharge Planning, the Chief of Department, and the General Counsel, or their respective designees of an appropriate rank. The Associate Commissioner for Programs and Discharge Planning shall be responsible for convening the Committee and shall act as chairperson.

    3.    In determining requests made pursuant to paragraph (2) of this subdivision, the following factors among others shall be considered as indicating a religious foundation for the belief and the requested accommodation:

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | |
|---|---|---|---|
| | CLASSIFICATION # **3261** | | |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING  **X** YES  ☐ NO | PAGE **6** OF **13** PAGES |



## III.  PROCEDURE (cont.)

    a.   whether there is substantial literature supporting the belief as related to religious principle;

    b.   whether there is formal, organized worship by a recognizable and cohesive group sharing the belief;

    c.   whether there is an informal association of persons who share common ethical, moral, or intellectual views supporting the belief; or

    d.   whether the belief is deeply and sincerely held by the inmate.

4.   In determining requests made pursuant to paragraph (2) of this subdivision, the following factors shall not be considered as indicating a lack of religious foundation for the belief and the requested accommodation:

    a.   the belief is held by a small number of individuals;

    b.   the belief is of recent origin;

    c.   the belief is not based on the concept of a Supreme Being or its equivalent; or

    d.   the belief is unpopular or controversial.

5.   In determining requests made pursuant to paragraph (2) of this subdivision, inmates shall be permitted to present evidence indicating a religious foundation for the belief.

6.   The Committee on Religious Accommodations shall consider all referrals from the Director of Ministerial Services and shall issue a written determination within 10 business days either implementing the requested accommodation in whole or in part or denying the inmate's request.

7.   Any determination of the Committee on Religious Accommodations to limit the exercise of an inmate's religious beliefs shall state the specific facts and reasons underlying such determination.  (See Committee on Religious Accommodations Disposition Form, attachment B).  Pursuant to the New York City Board of Correction (BOC) minimum standards, the Committee on Religious Accommodations shall send a copy of its determination to the BOC and to any person affected by the determination within 24 hours of the determination.  Any person affected by a determination made pursuant to this subdivision may appeal such determination as follows:

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT | | |
|---|---|---|---|---|
|  | CLASSIFICATION # **3261** | **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | |  |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **7** OF **13** PAGES | |

### III. PROCEDURE (cont.)

   a.   The person affected by the determination shall give notice in writing to the BOC and the Department of his/her intent to appeal the determination.

   b.   The Department and any person affected by the determination may submit to the BOC for its consideration any relevant material in addition to the written determination.

   c.   The BOC or its designee shall issue a written decision upon the appeal within 14 business days after receiving notice of the requested review.

8.   Notice of this process shall be included in the inmate handbook.

### IV. LIMITING THE EXERCISE OF RELIGIOUS BELIEFS: DUE PROCESS PROCEDURES

A.   Inmates shall be permitted to exercise their religious beliefs in any manner provided that the exercise of such religious beliefs does not present a clear and present danger to the safety and security of the Department or disrupt the orderly administration of the Department. The Department shall refrain from imposing a substantial burden on an inmate's religious exercise unless the burden (1) furthers a compelling Department interest such as safety or security and (2) is the least restrictive means of furthering that compelling interest.

B.   Any determination to limit attendance at congregate religious services or otherwise limit an inmate's otherwise permissible exercise of religious beliefs must be based on specific acts committed by the inmate during the inmate's exercise of religion that constitute a serious and immediate threat to the safety and security of the facility. The Department shall give notice of its determination by delivering to the inmate the Notice to Limit Exercise of Religious Beliefs (attachment C). The notice shall contain the specific acts committed. However, the notice shall not disclose confidential information under any circumstances. Within three business days after serving a notice to an inmate that the Department intends to limit the inmate's exercise of a religious belief, a captain assigned to the Adjudication Unit shall conduct a hearing to determine whether the limitation is appropriate. The hearing may be held in conjunction with any related disciplinary infraction.

Note:   Although the Adjudication Unit shall conduct a hearing within three business days after service of the Notice to Limit Exercise of Religious Beliefs, in accordance with Directive 6500R-B, Inmate Disciplinary Due Process (or its successor), that time frame is subject to the following exclusions:

416R



| EFFECTIVE DATE **09/10/12** | SUBJECT | | |
|---|---|---|---|
| CLASSIFICATION # **3261** | **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | |  |
| DISTRIBUTION **A** | APPROVED FOR WEB POSTING [X] YES  [ ] NO | PAGE **8** OF **13** PAGES | |

## IV. LIMITING THE EXERCISE OF RELIGIOUS BELIEFS: DUE PROCESS PROCEDURES (cont.)

1. The day the inmate is served;

2. When the inmate has a court appearance, whether in person or via a video-teleconference, and is therefore unavailable for the hearing;

3. When the inmate is hospitalized and unable to attend a disciplinary hearing, or is transferred out of the facility for a hospital or clinic appointment;

4. When the inmate leaves the facility for an attorney interview and is therefore unavailable for the hearing;

5. When the inmate is unavailable because he/she is transferred to another facility; and

6. When the inmate is unavailable due to his/her absence from the facility for any purpose, including significant family events or emergency situations.

C. At the hearing, the Adjudication Captain shall review all evidence regarding the limitation determination. The inmate shall have an opportunity to present evidence, including witness testimony, at the hearing. At the conclusion of the hearing, the Adjudication Captain shall render a decision based on a preponderance of the evidence. The decision shall be recorded on the Notice of Hearing Determination to Limit the Exercise of Religious Beliefs (attachment D) and issued within five business days of the conclusion of the hearing. Within 24 hours of the Adjudication Captain's determination, the Adjudication Captain shall send any determination that limits an inmate's exercise of religious beliefs to the Commanding Officer, the Board of Correction, any person affected by the determination, and the Director of Ministerial Services.

D. The following guidelines shall be followed in assessing periods of suspension under this section. In the event that an inmate is found guilty of multiple offenses arising from the same incident, the period of suspension shall be based upon concurrent rather than consecutive penalties. If an inmate is found guilty of committing a second and similar grade II or III offense during or in connection with attendance at religious services, a religious activity, or use/possession of a religious article, during the same period of incarceration, the inmate's exercise of religious beliefs may be limited or denied in accordance with the penalty that applies to the next higher grade of offense.

416R



| | EFFECTIVE DATE 09/10/12 | SUBJECT | ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES | |
|---|---|---|---|---|
| | CLASSIFICATION # 3261 | | | |
| | DISTRIBUTION A | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE 9 OF 13 PAGES | |



## IV. LIMITING THE EXERCISE OF RELIGIOUS BELIEFS: DUE PROCESS PROCEDURES (cont.)

### PERIOD OF SUSPENSION OF RIGHT OF PARTICIPATION: EXERCISE OF RELIGIOUS BELIEFS

| | Offense | Maximum Period of Suspension | Third Offense (Same Rule of Conduct) |
|---|---|---|---|
| 1. | Commission of a Grade I Inmate Rule Book offense, during or in connection with attendance at religious services, a religious activity, or use/possession of religious article. | 90-day limitation | |
| 2. | Commission of a Grade II Inmate Rule Book offense, during or in connection with attendance at religious services, a religious activity, or use/possession of religious article. | 20-day limitation | Maximum 90-day limitation |
| 3. | Commission of a Grade III Inmate Rule Book offense, during or in connection with attendance at religious services, a religious activity, or use/possession of religious article. | 10-day limitation | Maximum 20-day limitation |

E.   Any person affected by the determination to limit the exercise of religious beliefs made pursuant to this subdivision may appeal such determination to the Board of Correction.

    1.   The person affected by the determination shall give notice in writing to the BOC and the Department of his or her intent to appeal the determination.

    2.   The department and any person affected by the determination may submit to the BOC for its consideration any relevant material in addition to the written determination.

    3.   The BOC or its designee shall issue a written decision upon the appeal within 14 business days after it has received notice of the requested review.

416R



| EFFECTIVE DATE **09/10/12** | SUBJECT | | |
|---|---|---|---|
| CLASSIFICATION # **3261** | **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | | |
| DISTRIBUTION **A** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **10** OF **13** PAGES | |



## V.   LOGBOOK ENTRIES

   A.   HOUSING AREA LOGBOOKS

      1.   Housing area officers are required to make the following entries in the housing area logbook, whenever inmates are going to and returning from religious activities:

         a.   date;

         b.   name of the religious service/activity;

         c.   time the housing area officer announced the service/activity and the method used to announce the service/activity;

         d.   time inmates departed from the housing area to attend the religious service/activity;

         e.   the number of inmates attending each religious service/activity;

         f.   time inmates returned to the housing area from the religious service/activity; and

         g.   name and shield number of the officer making the log entries.

      2.   After making the housing area logbook entries, the housing area shall communicate the above information to the Control Room for entry in the Institutional Logbook.

   B.   INSTITUTIONAL LOGBOOK

      Whenever a congregate religious service or other religious activity is conducted, the following entries shall be made in the Institutional Logbook for each denomination that conducted a religious service/activity.

      1.   date and time the religious service/activity was conducted;

      2.   name of the religious service/activity;

      3.   list separately, the number of general population and special population category inmates in attendance;

      4.   name of all clergy and/or other individual(s) who conducted the religious service/activity;

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT | |  |
|---|---|---|---|---|
| | CLASSIFICATION # **3261** | **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | | |
| | DISTRIBUTION **A** | APPROVED FOR WEB POSTING<br>☒ YES  ☐ NO | PAGE **11** OF **13** PAGES | |

## V.  LOGBOOK ENTRIES (cont.)

    5.    time the religious service/activity was concluded; and

    6.    name and shield number of the officer making the entries.

## VI.  RESPONSIBILITIES

  A.  Ministerial Services shall:

    1.    Monitor patterns in changes of inmate's religious affiliations to prevent abuse and maintain the orderly running of the Department.

    2.    Schedule appropriate congregate religious services to meet the needs of inmates.

    3.    Maintain an annual calendar (by fiscal year) of the dates observed as holy days and provide guidance to the facilities regarding the requirements for observance of these holy days.  Distribute this annual calendar to each facility no later than June 1st of the preceding year.

    4.    Update as appropriate the list of approved religious items.

    5.    Coordinate staff and resources in the delivery of ministerial services.

    6.    Convene meetings of the Religious Accommodations Committee.

  B.  The Deputy Warden for Programs shall:

    1.    Upon receipt of notification of a change in an inmate's religious affiliation from the Director of Ministerial Services, ensure that the inmate's records are updated to reflect the approved change within two business days.

    2.    Notify the Deputy Warden for Administration of inmates permitted to participate in the Kosher/Halal Meal Program and alternative religious diets.

    3.    Maintain and post in each housing area a list of all religious groups for which congregate services are offered.

    4.    Post notice of congregate religious services in English and Spanish in all housing areas.

    5.    Ensure appropriate space is available for religious services.

416R

| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT | | |
|---|---|---|---|---|
|  | | **ACCESS TO RELIGIOUS<br>PROGRAMS AND PRACTICES** | |  |
| | CLASSIFICATION #<br>**3261** | | | |
| | DISTRIBUTION<br>**A** | APPROVED FOR WEB POSTING<br>**X** YES ☐ NO | PAGE **12** OF<br>**13** PAGES | |

## VI.  RESPONSIBILITIES (cont.)

    6.    Post notice of holy day observances in English and Spanish in all housing areas at least two weeks before the day and document all requests to attend.

    C.    Committee on Religious Accommodations

        1.    Reviews all referrals from the Director of Ministerial Services for religious accommodations and issues a written determination within 10 business days.

        2.    Sends any determination to limit the exercise of religious beliefs to the Board of Correction and to any person affected by the determination within 24 hours of the determination.

    D.    Chaplains

        1.    Conduct religious services as scheduled by the Department.

        2.    Review inmate requests to change religious affiliation and forward all changes in religious affiliation to Ministerial Services and the Deputy Warden for Programs.

    E.    Administrative Chaplains

        1.    Consult with the Director of Ministerial Services to attempt to resolve requests for religious accommodations.

        2.    Review requests for alternative diets based on religious needs.

## VII.  ATTACHMENTS

    A.    Appendix A, Permissible Religious Articles

    B.    Committee on Religious Accommodations Disposition Form (Form ARPP1)

    C.    Notice to Limit the Exercise of Religious Beliefs (Form ARPP2)

    D.    Notice of Hearing Determination to Limit the Exercise of Religious Beliefs (Form ARPP3)

416R



| EFFECTIVE DATE **09/10/12** | SUBJECT | |
|---|---|---|
| CLASSIFICATION # **3261** | **ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES** | |
| DISTRIBUTION **A** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **13** OF **13** PAGES |



## VIII. SUPERSEDES

A. Directive 3252, CONGREGATE RELIGIOUS SERVICES, dated 04/19/85

B. Directive 3259R-A, MUSLIM OILS, dated 06/30/09

C. Directive 3260, THE JEWISH TEFILIN, dated 3/12/93

D. Any other Directive, Operations Order, Teletype, Memorandum, etc, that may be in conflict with the policies and procedures outlined herein.


## IX. SPECIAL INSTRUCTIONS

A. Within ten (10) calendar days of the effective date of this order, all Commanding Officers shall implement a Command Level Order incorporating the policy and provisions outlined herein.

B. All facility managers and supervisors shall ensure strict enforcement of the policy, guidelines and procedures noted herein.



**ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES**

| APPENDIX A | Attachment A | Ref.: Dir. #3261<br>Eff.: 09/10/12 |
|---|---|---|
| **PERMISSIBLE RELIGIOUS ARTICLES** | | Page 1 of 2 Pages |



The following items are approved for use as specified and subject to Department rules concerning the receipt and accumulation of personal property. However, inmates are prohibited from possessing these religious articles in prohibited color schemes. Religious articles that inmates possess in prohibited color schemes are subject to confiscation, and will be stored with the inmates' property.

1.  MUSLIM OILS

    Muslim Oils may be dispensed only by Department Imams or outside volunteer Imams to Muslim inmates prior to Jummah service. The Muslim Oils can only be dispensed in an amount necessary for an individual to anoint himself/herself and only in designated areas. Inmates are not permitted to have Muslim Oils as part of their personal possessions.

2.  TEFILIN

    Jewish inmates may possess the Tefilin which consists of two separate leather boxes, stitched closed, with leather straps attached to them. One box is worn on the head with the straps wrapped around the head, and the other is worn on the forearm with the straps wrapped around the length of the hand. The Tefilin are sacred objects used by Jewish inmates every morning except Saturday and Jewish holy days. During a search of an inmate who has a Tefilin, the Tefilin should be treated with respect because of its religious significance. If the physical inspection of the Tefilin indicates that the seal has been tampered with (broken threads), it shall be confiscated and a request that it be inspected will be made to the appropriate rabbi.

3.  SACRAMENTAL WINE

    The Director of Ministerial Services shall order sacramental wine shall be ordered and keep it securely stored. The Director shall control distribution and shall only dispense the required amount to chaplains for use in religious services. Only a departmental chaplain may consume sacramental wine, except that inmates and staff may consume hosts which have been dipped in sacramental wine during religious services.

4.  KUFI

    A close-fitting, cloth cap worn on the head.

5.  YARMULKE

    A close-fitting skull cap made of cloth.

6.  TSALOT-KOB

    A hemispheric head cap made of cloth worn by members of the Rastafarian faith.



| ACCESS TO RELIGIOUS PROGRAMS AND PRACTICES | | |
|---|---|---|
| **APPENDIX A**      Attachment A | Ref.: Dir. #3261<br>Eff.: 09/10/12 | |
| **PERMISSIBLE RELIGIOUS ARTICLES** | Page 2 of 2 Pages | |

7.   FEZ

A brimless, cone-shaped, flat-crowned hat that usually has a tassel and is usually made of red felt.

8.   HEAD COVERINGS

Head scarves that female inmates of the Muslim, Jewish, and Protestant faiths may wear that cover the entire head and in some cases the upper torso.  The inmate's face must be fully visible.

9.   RELIGIOUS BEADS OR PENDANTS

Inmates are permitted to possess, carry, wear and display Rosary beads, Dhikr beads, Santeria beads or other religious pendants for prayer and worship.  With respect to religious jewelry (jewelry of recognized religious significance), inmates may possess one religious medal (no stones, pins or protrusions); if worn around the neck, a thin chain no longer than 26 inches may be worn (maximum value $50).

10.   RELIGIOUS TEXTS AND LITERATURE

Religious texts such as the Bible, the Torah, and the Koran.

11.   ANY OTHER RELIGIOUS ARTICLE APPROVED BY THE COMMITTEE ON RELIGIOUS ACCOMMODATIONS

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## COMMITTEE ON RELIGIOUS ACCOMMODATIONS

### DISPOSITION FORM      Attachment B

Form: ARPP1
Eff.: 09/10/12
Ref.: Dir. #3261

| Inmate's Name: | Book & Case #: | NYSID #: |
|---|---|---|
| Facility: | Housing Area: | Date Filed: |

Inmate's request:

The request is:

☐ Approved:          ☐ Modified:          ☐ Denied:

Specific facts and reasons for determinations:

## NOTICE TO INMATE

The Committee on Religious Accommodations' determination represents the NYC Department of Correction's final decision on the inmate's request and is not subject to further appeal within the Department.  The DOC shall send a copy of any determination limiting the exercise of an inmate's religious beliefs to the New York City Board of Correction within 24 hours of the determination.  If you disagree with the decision, you may independently appeal to the New York City Board of Correction, 51 Chambers St., Rm. 923, New York, NY 10007.  The BOC shall issue a written decision upon the appeal within 14 business days after receiving notice of it.

Check the appropriate box below and provide your signature.

☐  I accept the Committee's disposition and do not wish to appeal to the BOC.

☐  I reject the Committee's disposition and intend to appeal to the BOC.

| Inmate's Signature : | Date: |
|---|---|
| Date of BOC notification: | Name of person who did the notification: | Name of person notified at BOC: |
| Associate Commissioner, Programs and Discharge Planning Signature: | Date: |

Distribution:      ORIGINAL To: DEPUTY WARDEN OF PROGRAMS - COPIES To : 1 - INMATE  2 - INMATE's LEGAL FOLDER



# NYC DEPARTMENT OF CORRECTION
## NOTICE TO LIMIT THE
## EXERCISE OF RELIGIOUS BELIEFS

| Attachment C | Form # ARPP2   Rev. 09/10/12   Ref. Dir. # 3261 |
| --- | --- |

| Facility: | Date: | Book & Case No.: |
| --- | --- | --- |

| Inmate Name (Last/First): | NYSID Number: |
| --- | --- |

| Housing Area: | Charges: |
| --- | --- |

| Date of Event: | Location: | Time: |
| --- | --- | --- |

Description of event  (Include specific description of action alleged):       ☐ Report and Notice of Infraction (attach if applicable)

_____

_____

_____

_____

_____

_____

_____

_____

_____

| Completed By Name/Signature: | Rank: | Date: |
| --- | --- | --- |

| Authorizing Supervisor's Name/Signature: | Date: |
| --- | --- |

**RIGHT TO HEARING:**  You are entitled to a hearing within three business days after you are served with this notice. At your hearing you have the following rights:

1. Right to appear personally;
2. Right to make statements;
3. Right to present relevant and non-redundant evidence; and
4. Right to present relevant and non-redundant witness.

Interpreter Requested:   ☐ Yes  ☐ No       If yes, specify language: _____

Counsel Substitute Requested:   ☐ Yes  ☐ No          Witness Requested:   ☐ Yes  ☐ No

| Witness Name (Print) | Number | Location |
| --- | --- | --- |
|  |  |  |
|  |  |  |
|  |  |  |

Within 24 hours after your hearing is concluded, you will receive a copy of the "Notice of Hearing Determination to Limit the Exercise of Religious Beliefs."

| I certify that I received a copy of this notice: | Inmate's Signature: | Date: | Time: |
| --- | --- | --- | --- |

| Served by (Print Name, Rank and Shield #): | Signature of Server: |
| --- | --- |

Distribution:
ORIGINAL To: DEPUTY WARDEN OF PROGRAMS    COPIES To : 1 - INMATE  2 - INMATE's LEGAL FOLDER

| Attachment D | NYC DEPARTMENT OF CORRECTION | |
|---|---|---|
| | **NOTICE OF HEARING DETERMINATION**<br>**TO LIMIT THE EXERCISE OF RELIGIOUS BELIEFS** | Form: ARPP3<br>Eff.: 09/10/12<br>Ref.: Dir. # 3261 |

| Facility: | Date: | Book & Case No.: |
|---|---|---|

| Inmate Name (Last/First): | NYSID Number: |
|---|---|

| Date of Event: | Location: | Time: |
|---|---|---|

☐ Hearing Delayed   ☐ Adjourned

Reason:

Inmate's Signature for Adjournment: _____  Date: _____

Findings of Fact/Reason for Determination:

The following reports and evidence were reviewed:

☐ Infractions        ☐ Incident Reports       ☐ I.D. Preliminary Report
☐ Injury Reports     ☐ Use of Force Reports   ☐ Evidence Voucher
☐ Arrest Records     ☐ Witness Reports        ☐ Pre-Sentence Report
☐ Securing Orders    ☐ Other:

**HEARING DECISION:** As a result of the actions described above (check all appropriate boxes):

☐ It has been determined that you violated departmental rules.  You are prohibited from:

☐ Attending congregate religious services;

☐ Possessing specified religious article(s) _____ ; and/or

☐ Participating in other specified religious activities _____ for

   ☐ 90 days   ☐ 20 days   ☐ 10 days   ☐ Other (specify) _____

☐ It has been determined that you did not violate departmental rules.  There has not been any restriction imposed, therefore BOC notice is not required.

| Hearing Officer (Name and Signature): | Date: |
|---|---|

Delayed Service of Determination ☐  Reason:

| I certify that I received<br>a copy of this notice: | Inmate's Signature: | Date: | Time: |
|---|---|---|---|
| Served by (Print Name, Rank and Shield #): | | Signature of Server: | |

**Notification to BOC shall be made via facsimile to (212) 788-7860 with a follow up call to (212) 788-7840 to ensure receipt.**

| Date of notification: | Name of Adjudication Captain who did the notification: | Name of person notified at BOC: |
|---|---|---|

**NOTICE TO INMATE**

This determination represents the NYC Department of Correction's final decision on the inmate's request and is not subject to further appeal within the Department.  The DOC shall send a copy of any determination limiting the exercise of an inmate's religious beliefs to the New York City Board of Correction within 24 hours of the determination.  If you disagree with the decision, you may independently appeal to the New York City Board of Correction, 51 Chambers St., Rm. 923, New York, NY 10007.  The BOC shall issue a written decision upon the appeal within 14 business days after receiving notice of it.

Distribution:
ORIGINAL TO: INMATE     COPIES TO : 1 - INMATE'S LEGAL FOLDER  2 - COPY TO DEPUTY WARDEN OF PROGRAMS

415R



### THE CITY OF NEW YORK
### DEPARTMENT OF CORRECTION

# DIRECTIVE



| [ ] NEW | [ ] INTERIM | [X] REVISED | SUBJECT | | |
|---|---|---|---|---|---|
| EFFECTIVE DATE **03/13/08** | | *TERMINATION DATE  /  / | **INMATE GRIEVANCE RESOLUTION PROGRAM** | | |
| CLASSIFICATION # **3375R-A** | SUPERSEDES **3375R** | DATED **03/04/85** | APPROVED FOR WEB POSTING  [X] YES   [ ] NO | DISTRIBUTION **A & B** | PAGE 1 OF 16 PAGES |

| RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER | AUTHORIZED BY THE COMMISSIONER |
|---|---|
| *Carolyn Thomas* | *Martin F. Horn* |
| CAROLYN THOMAS, CHIEF OF DEPARTMENT     SIGNATURE | MARTIN F. HORN                          SIGNATURE |

## I.  PURPOSE

A.  The Inmate Grievance Resolution Program (IGRP) makes available to each inmate an orderly, fair, simple and expeditious method of resolving grievances. The purpose of the IGRP is to allow an inmate to seek resolution of an issue relating to aspects of his/her confinement that fall within the scope of this Directive.

B.  The New York City Department of Correction (DOC) shall inform all inmates in custody of their access to the IGRP. This program is intended to supplement, not replace, existing formal or informal channels of problem resolution. It is not intended to support an adversarial process, but is designed to promote mediation and conflict reduction in the resolution of grievances.

C.  Under this program, any inmate who is personally affected by an issue may address a complaint to the Inmate Grievance Resolution Committee (IGRC), a facility committee of inmates and appointed staff members. If not satisfied with the IGRC decision, the inmate may appeal to the Commanding Officer of the facility. If not satisfied with the Commanding Officer's decision, the inmate may appeal to the Central Office Review Committee (CORC); and if still unsatisfied, the inmate may appeal to the New York City Board of Correction (BOC). The BOC issues its findings and non-binding recommendations to the Commissioner, who makes the final decision. The Executive Director of the Department's IGRP has overall responsibility for the sound management of the IGRP, including coordination of all efforts directed at ensuring the integrity and effectiveness of the IGRC existing in each of the Department's inmate housing facilities.

## II.  GENERAL POLICIES

A.  INMATE'S RESPONSIBILITY

An inmate, whenever feasible, should seek assistance in resolving a complaint through a service unit, the program area directly affected, or other existing channels, prior to submitting a formal grievance. An inmate is not required to seek such assistance as a pre-condition to the filing of a formal grievance.

416R

| | EFFECTIVE DATE **03/13/08** | SUBJECT **INMATE GRIEVANCE RESOLUTION PROGRAM** | | |
|---|---|---|---|---|
| | CLASSIFICATION # **3375R-A** | | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **2** OF **16** PAGES | |

## II.  GENERAL POLICIES (cont.)

### B.  INMATE MUST BE PERSONALLY AFFECTED BY GRIEVANCE ISSUE

An inmate must be personally affected by the policy or issue he/she is grieving.  All grievances must be filed in an individual capacity.  Class actions on behalf of all inmates or a class of inmates are not to be instituted through the grievance procedure. However, individuals personally affected by a matter which affects all inmates, or a class of inmates, may file individual grievances on their own behalf. The grievance must affect the inmate directly, and must have affected the inmate directly during the ten (10) days of confinement immediately prior to the filing of the grievance.  See also section IV.B.1.a.

### C.  NON-GRIEVABLE ISSUES

1.  The individual decisions or dispositions of any current or subsequent program or procedure having its own administrative or investigative process within the Department shall be considered non-grievable. The decisions or dispositions that are considered non-grievable within the IGRP, include, but are not limited to: disciplinary proceedings, discrimination based on disability or perceived disability, Centrally Monitored Case (CMC) Status, Red Identification (ID) or Enhanced Restraint Status, Classification designations, such as Close Custody Housing (CCH), Use of Force, Freedom of Information Law (FOIL) requests, and matters under investigation by the Investigation Division (ID) and the NYC Department of Investigation (DOI) / Inspector General (IG). In addition, matters outside the jurisdiction of the DOC are non-grievable. Grievances that request actions that are not obtainable via the IGRP, will result in dismissal at the IGRC level.  In such cases, the grievant shall be directed to the appropriate mechanism whereby he/she can seek the resolution requested.

2.  Inmate allegations of assault or harassment by either staff or inmates are not grievable under the grievance mechanism.  However, reports of such allegations made to the IGRP shall be recorded on the "Inmate Report of an Alleged Assault/Harassment" (Form #7316R, Attachment A) and shall be entered in a confidential IGRC logbook. The form, together with any relevant documentation submitted by the complainant shall be hand delivered by IGRC staff, on the day of receipt, to the office of the Commanding Officer, or designee, where the form shall be time-stamped and an appropriate entry made in a confidential IGRP ASSAULT/HARASSMENT logbook.

416R

| | EFFECTIVE DATE **03/13/08** | SUBJECT **INMATE GRIEVANCE RESOLUTION PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3375R-A** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **3** OF **16** PAGES |

## II.   GENERAL POLICIES (cont.)

3.   Since no level of review in the grievance process is adversarial, any portion of a complaint in which the remedy sought involves the removal of a staff person from an assignment, or the censure, discipline or termination of a staff person, is not grievable. The underlying complaint is grievable unless it constitutes assault, harassment or criminal misconduct. The inmate shall be advised that complaints involving removal of a staff person may be addressed by direct submission to the Commanding Officer (or designee), Inspector General, or Investigation Division.

### D.   REASONABLE ACCOMMODATIONS

The Grievance Supervisor will ensure that disabled inmates are provided the necessary assistance to facilitate their access to, and utilization of, the IGRP. Reasonable accommodations shall include, but are not limited to, meetings with inmates at accessible sites and the provision of qualified sign language interpreters for those deaf and hard-of-hearing inmates who use only sign language to communicate. If an inmate expresses difficulty in communicating or understanding, reasonable accommodations will be made to ensure the inmate's full access to all steps in the grievance process. Copies of all determinations as to whether to provide an inmate with a reasonable accommodation shall be sent to the Inmate Disability Rights Coordinator (DRC) at DOC Headquarters (see Directive #3802, entitled "Reasonable Accommodation for Inmates with Disabilities," or its successor).

### E.   INTERPRETERS/ADVISORS

Interpreters/advisors will be provided for those inmates that want to access the grievance procedure, but do not speak or write English sufficiently. Inmates or staff may function as interpreters/advisors.  In the event an appropriate interpreter/advisor cannot be located, then the services of the Department's Language Bank will be utilized.

## III.   DEFINITIONS

### A.   GRIEVANCE - a written complaint submitted by an inmate in the custody of the Department about the substance or application of any written or unwritten policy, regulation, rule, or procedure of the DOC or any of it's units, or the lack of a policy, regulation, rule, or procedure, based on the impact of such policy or lack thereof on the inmate personally.

### B.   DEPARTMENTAL GRIEVANCE - a matter that concerns the impact of a departmental policy, directive or procedure.

416R

| | EFFECTIVE DATE<br>**03/13/08** | SUBJECT<br>**INMATE GRIEVANCE RESOLUTION PROGRAM** | |
|---|---|---|---|
|  | CLASSIFICATION #<br>**3375R-A** | |  |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES   [ ] NO | PAGE **4** OF<br>**16** PAGES |

## III.  DEFINITIONS (cont.)

C.  INSTITUTIONAL GRIEVANCE – a grievance in which the grievant is only affected as long as the inmate remains housed in the facility/institution in which the grievance is filed.

D.  DAYS – All references to a number of days means calendar days, excluding weekends and holidays.

## IV.  PROCEDURE

A.  INMATE GRIEVANCE RESOLUTION COMMITTEE (IGRC)

A facility's IGRC is a five (5) member body consisting of one voting Inmate Grievance Representative (IGR), one voting Uniformed Staff Representative (USR), one voting Inmate Grievance Supervisor (IGS), one non-voting Inmate Housing Aide, and one non-voting Inmate Grievance Clerk (IGC).  The majority of voting members must be present to render a decision.  Matters on which IGRC cannot reach a resolution by majority vote shall be forwarded to the Commanding Officer for action and response.

1.  Composition of IGRC Staff

a.  Inmate Grievance Representative (IGR)

An IGR is a voting member of the IGRC who is responsible for assisting in the clerical processing of grievances, aiding staff representatives in fact-finding investigations, resolving grievances at the informal and formal levels of review, and formulating and issuing grievance recommendations to the Commanding Officer or designee for action and/or response. IGRs shall not hold joint membership on the Inmate Council Committee.  The tasks of an IGR do not include access to inmate-restricted areas or documents.

b.  SELECTION OF INMATE REPRESENTATIVE

i.  ELECTIONS

• Elections for IGR shall be conducted at quarterly intervals.  The IGRs and alternates shall be elected by their peers and paid as skilled workers in accordance with Directive #4014R-A, entitled "Inmate Incentive Pay Plan" (or its successor) and in consultation with the facility Inmate Assignment Office. Elected IGRs shall not be transferred during their term as IGR, absent an emergency or change in Classification or other good cause, and shall not serve more than three (3) consecutive terms of ninety (90) days at a single facility.

416R



| EFFECTIVE DATE **03/13/08** | SUBJECT **INMATE GRIEVANCE RESOLUTION PROGRAM** |
|---|---|
| CLASSIFICATION # **3375R-A** | |
| DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **5** OF **16** PAGES |



### IV.  PROCEDURE (cont.)

The alternate IGRs, those placing second and third in the most recent election, may be utilized to fill a vacancy between elections.

- The approved nomination and election procedure shall be conspicuously posted at least five (5) days prior to nominations being held.   All nominees are subject to security clearance by the Commanding Officer, or designee, within seven (7) days of the submission of their nomination.   The names of cleared nominees shall be posted conspicuously in inmate congregate areas for five (5) days prior to the scheduled election.  The election shall be conducted within five (5) days after the nominations are made and nominees are cleared.

ii.  REMOVAL OR TRANSFER OF IGRs

See Directive #3377, entitled "Due Process for IGRC Inmate Representatives", Section IV., or its successor .

c.  INMATE GRIEVANCE CLERK (IGC) is an inmate who is selected by the Inmate Grievance Supervisor and paid as a skilled worker in accordance with Directive #4014R-A (or its successor) and in consultation with the Inmate Assignment Office.  The duties of the IGC shall be at the discretion of the IGS.  The IGC is a non-voting member.

d.  UNIFORMED STAFF REPRESENTATIVE (USR)

i.  A USR is a Correction Officer, who is a voting member of the IGRC. He/she is responsible for the following:

- Supervising and escorting all inmates involved in IGRC activity.

- Conducting accurate and timely fact-finding investigations of inmate grievances.

- Assisting in the mediation and resolution of inmate grievances at the informal and formal levels of review.

- Formulating and issuing recommendations to the Commanding Officer or designee for action and response.

- Presenting pertinent and accurate documentation on all inmate grievances handled by IGRC.

416R



| EFFECTIVE DATE **03/13/08** | SUBJECT **INMATE GRIEVANCE RESOLUTION PROGRAM** | |
|---|---|---|
| CLASSIFICATION # **3375R-A** | | |
| DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **6** OF **16** PAGES |



## IV.   PROCEDURE (cont.)

- Inspecting institutional grievance boxes every business day, as well as retrieving all submitted grievances every business day.

- Preparing and processing payrolls for all inmates assigned to IGRC.

- Assisting the IGS in the nomination and election process for IGR, training and orientation for inmates assigned to IGRC, and monitoring the implementation of grievance dispositions.

- Supervising the IGRC in the absence of the IGS.

ii.  Uniformed Staff Representatives shall not be assigned duties that could potentially conflict with their ability to independently evaluate grievances, nor shall they serve in roles in which they are likely to be the subject of an inmate grievance.  In the event that the uniformed representative is involved in any manner with an inmate grievance, the uniformed representative must recuse himself/herself from dealing the IGRC duties in that matter.

iii.  Vacancies for USRs shall be posted in the facility as set forth in Operations Order #14/91, entitled "Awarding Job Assignments Within a Command" or its successor. Past job performance, attendance record, education and aptitude for the position shall be some of the factors used in the selection process for USR. The IGS shall interview all appropriate candidates and in consultation with the Commanding Officer or designee select the USR.

e.  INMATE HOUSING AIDE - is an inmate who is selected by the IGS, with approval of the Commanding Officer, or designee, and is paid as a skilled worker in accordance with Directive #4014R-A (or its successor).  Inmate Housing Aides are responsible for explaining the IGRP to inmates in the housing areas and assisting with the identification and verification of problem areas related to specific grievances within assigned housing areas. Inmate Housing Aides are non-voting members.

f.  INMATE GRIEVANCE SUPERVISOR (IGS) - is a civilian employee of the Department, who is a voting member of the IGRC, assigned and selected by the Executive Director of the IGRP. He/she is responsible for the administration of the IGRC in the facility, and for ensuring that the program operates pursuant to this Directive. The IGS directly supervises inmates and uniformed IGRP staff in the processing of grievances, chairs IGRC hearings, conducts and supervises quarterly inmate-representative elections, prepares monthly statistical data on grievances for submission to the Commanding

416R

| | EFFECTIVE DATE **03/13/08** | SUBJECT **INMATE GRIEVANCE RESOLUTION PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3375R-A** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **7** OF **16** PAGES |

## IV. PROCEDURE (cont.)

Officer or designee and IGRP Executive Director, and where appropriate, participates in grievance investigations. The IGS shall be permitted unescorted and unrestricted movement in the facility to which he/she is assigned.

2. ASSIGNED DUTIES AND WORK ACTIVITIES OF GRIEVANCE SUPERVISORS AND STAFF REPRESENTATIVES

The Executive Director of the IGRP or designee shall assign duties and work activities to Inmate Grievance Supervisors and Uniformed Staff Representatives. The Executive Director of the IGRP, or designee, shall determine the work schedule for the IGS and USR. Requests to be excused from duty, including requests for vacation leave, are subject to the direct approval of the Executive Director of the IGRP, or designee. The Executive Director of the IGRP, or designee, shall notify the Commanding Officer or designee of such approval. Where the Executive Director of the IGRP, or designee, directs an IGS and/or USR to leave their parent facility for Headquarters, meetings or other destinations, the IGS shall inform the Commanding Officer, or designee, immediately upon notification of such assignment(s). A Correction Officer or Non-Uniformed Investigator shall be assigned to the Executive Director of the IGRP, to serve as Field Operations Investigator and assist in investigative and administrative functions, as assigned by the Executive Director to fulfill the mission of the IGRP.

3. CODE OF ETHICS - All members of the IGRC shall receive a written notice of the IGRP's Code of Ethics (Form # 7113-R, Attachment B) and shall sign an affidavit indicating that they have received such notice and have been advised of its meaning. The Executive Director or his/her designee shall maintain the signed form and a copy shall be provided to the signatory.

a. The Code of Ethics consists of the following principles:

i. Members shall not obstruct an inmate from exercising his/her right to file a grievance.

ii. Members shall demonstrate a willing and tactful attitude in the performance of their duties.

iii. Members shall not expect or receive preferential treatment because of his or her participation in the IGRC.

iv. Members shall not abuse their particular duties, responsibilities or assignments.

416R

| | EFFECTIVE DATE<br>**03/13/08** | SUBJECT<br>**INMATE GRIEVANCE RESOLUTION PROGRAM** |  |
|---|---|---|---|
| | CLASSIFICATION #<br>**3375R-A** | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES ☐ NO | PAGE **8** OF<br>**16** PAGES |

IV.   **PROCEDURE (cont.)**

  v. Members shall be responsible for safekeeping of grievance files and ensuring against their unauthorized use.

  vi. Members shall not intentionally undermine the IGRC's operations or credibility.

  vii. Members of the IGRC shall have a working knowledge of the program and of their responsibilities as members.

  viii. Members shall not violate Department rules and regulations.

 b. Processing of Code of Ethics Violations

  The IGS shall monitor the behavior of Inmate Clerks and Aides for compliance with the IGRP Code of Ethics. Inmate representatives and alternates who violate the IGRP Code of Ethics may be removed in accordance with due process requirements, as set forth in Directive #3377, or its successor.

 4. GRIEVANCE DISMISSALS - the Grievance Supervisor may dismiss and close the grievance if he/she determines that: (1) the grievant has not been, or will not be personally affected by the issue in his/her complaint in accordance with Section II.B.; or (2) the complaint is non-grievable in accordance with Section II.C.; (3) the grievant is seeking action with respect to matters outside the jurisdiction of the DOC; or (4) the grievance is institutional in nature and no longer affects a grievant who has been transferred from the facility where the grievance was originally lodged. In such cases, the coordinator shall clearly cite the reason(s) for such dismissal on Form #7115R, Formal Hearing Complaint Dismissal Form (Attachment C) and shall, where appropriate, refer the grievant to the appropriate existing mechanism for redress of the matter grieved.

B.  GRIEVANCE PROCEDURE

 1. FIRST STEP - SUBMITTING THE COMPLAINT TO THE INMATE GRIEVANCE RESOLUTION COMMITTEE (IGRC)

  a. Within ten (10) days from the date the alleged issue relating to his/her confinement took place, an inmate must submit a complaint on an "Inmate Interview Slip" (Form #143, Attachment D) or an "Inmate Grievance Form" (Form #7101R, Attachment E). If these forms are not available, a complaint may be submitted on plain paper. The grievant must file the grievance as follows: (1) deposit the written complaint into a "Grievance Box", located in the inmate's housing area, or (2) deliver it to the Grievance Office, or (3) give it to the Grievance Coordinator. The grievance must contain the grievant's name, Book and Case number, present housing facility, a concise, specific description

416R

| | EFFECTIVE DATE **03/13/08** | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION # **3375R-A** | **INMATE GRIEVANCE RESOLUTION PROGRAM** | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **9** OF **16** PAGES |

## IV. PROCEDURE (cont.)

of the problem/complaint and the action requested. Upon receipt of the complaint, if deemed grievable, it shall be consecutively numbered and logged. All grievances shall be investigated and documented on an "Investigation Form" (Form #7112, Attachment F). If a matter is determined to be non-grievable, the IGS shall log it in the "Non-Grievable Logbook" and communicate the determination to the inmate, via Form #7114, Non-Grievable Complaint (Attachment G), along with information on what process is available to address the matter of concern. A submission that requests to see the IGRC or which fails to allege specific facts as a basis for a grievance will not be considered a grievance. When the grievance office receives such a submission, the initiating inmate will be summoned to the Grievance Office for an interview. Once DOC staff and the inmate meet, and if DOC staff determines the matter to be grievable, DOC staff will assign a grievance log number to the inmate's allegations, and a copy of the "Inmate Grievance Form" (Form #7101R) will be given to the inmate. A grievance is not considered submitted until a log number has been assigned.

b. EXTENSION TO SUBMIT A COMPLAINT - Where the inmate demonstrates a valid reason for delay, an extension in submission time may be allowed by the IGS. In general, a valid reason for delay means a situation in which the inmate was prevented by circumstances beyond his or her control from submitting the request within the established time frame.

c. INFORMAL RESOLUTION - Representatives of the IGRC shall have up to five (5) days to review a grievance or resolve it informally. If the matter is so resolved to the satisfaction of the grievant, the resolution and the grievant's signed consent must be entered on the "Inmate Grievance Form" (Form #7101R). The IGRC members involved shall sign all IGRC decisions and recommendations. The role of the IGRC is to resolve grievances and/or make recommendations for the resolution of the grievances filed.

d. FORMAL RESOLUTION

i. IGRC HEARING - If no informal resolution is reached within the five (5) day period discussed in paragraph IV.B.1.c. above, or if the grievant does not concur with the informal resolution of the grievance, the inmate has five (5) days from notification of disposition to request a hearing. If the inmate has not received any response within the same five (5) day period, the inmate should go to the Grievance Office to sign Form #7101R and indicate on

416R

| | EFFECTIVE DATE **03/13/08** | SUBJECT **INMATE GRIEVANCE RESOLUTION PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3375R-A** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **10** OF **16** PAGES |

### IV.  PROCEDURE (cont.)

that form that a hearing is requested.  Any inmate confined to a cell must request Form #7101R from the Grievance Coordinator and follow this procedure.  If the inmate makes such a hearing request, the full committee shall hear the complaint and render a decision within three (3) days of the request for a hearing.  When scheduling the hearing, the IGS shall complete a "Hearing Notice" (Form #7102R, Attachment H) and ensure that the form is served upon the grievant.

The IGS is the chairperson of the IGRC and shall make certain that the grievant and available relevant witnesses, if any, are afforded a reasonable opportunity to appear at the hearing and testify, subject to reasonable security considerations.  If the grievant does not appear at the scheduled hearing and fails to provide a legitimate and substantiated reason (e.g., court appearance, visit, medical treatment or parole hearing), then the IGRC shall hold the hearing in absentia and has the authority to reach a decision or dismiss the grievance by majority vote.  If the grievant misses the hearing due to legitimate and substantiated reasons, then the IGRC may adjourn the hearing, except that, if the grievant misses three (3) scheduled hearings due to legitimate reasons, the IGRC shall act on the grievance at the third scheduled hearing.

The full IGRC shall conduct the hearing at the time and place set.  The grievant and available relevant witnesses may present relevant information, comments or other evidence in furtherance of their respective positions. The IGRC shall determine the relevance and materiality of the evidence offered.

ii.  Committee Decision/Recommendation - After the IGS closes the hearing, the IGRC shall deliberate in private session.  Within two (2) days, the committee must notify the grievant of the decision and/or recommendations in writing on the   "Inmate Grievance Form" (Form #7101R).  All voting IGRC members involved shall sign all IGRC decisions and recommendations.  In the event that there is no majority decision, the matter is to be referred for further appeal to the Commanding Officer as described below.

iii.  Procedure for Filing an Appeal - Within five (5) days after the receipt of the committee's written response to the grievance, an inmate may appeal the IGRC action to the appropriate Commanding Officer, or designee, by filing an appeal (found on the 2nd page of the "Inmate Grievance Form", Form #7101R), with   the Grievance Office.  The facility Grievance Office shall date and time-stamp the appeal. The IGS

416R

| | EFFECTIVE DATE<br>**03/13/08** | SUBJECT<br>**INMATE GRIEVANCE RESOLUTION PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION #<br>**3375R-A** | |  |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>**X** YES ☐ NO | PAGE **11** OF<br>**16** PAGES |

## IV. PROCEDURE (cont.)

shall forward the appeal to the Commanding Officer, or designee, within one (1) day of receipt.

iv.  Extension to File an Appeal - Where the grievant in DOC's custody demonstrates a valid reason for delay, an extension in filing time for an appeal may be allowed by the IGS.  In general, a valid reason for delay means a situation in which the grievant was prevented by circumstances beyond his/her control from submitting the appeal within the established time frame.

2.  SECOND STEP - APPEAL PROCESS TO THE COMMANDING OFFICER

a.  Referral to the Commanding Officer - In all cases where action of the Commanding Officer, or designee, is required, the grievance papers and all relevant supplemental documents shall be transmitted by the Grievance Office to the Commanding Officer, or designee, within one (1) day after receipt of the appeal.

b.  Commanding Officer's Action - The Commanding Officer, or designee, will time and date-stamp all grievances forwarded showing when they were received. The Commanding Officer, or designee, shall determine if the grievance is departmental or institutional in nature.

i.  Departmental Issue - If the matter concerns the revision of a departmental policy/directive or procedure, the Commanding Officer, or designee, shall forward the grievance papers and a recommendation, via the "Transmittal to CORC" (Form #7104R, Attachment I) to the IGS within five (5) days. The IGS must forward the recommendation and related paperwork to the Executive Director, IGRP within one (1) day.  The Executive Director must forward the recommendation to the Central Office Review Committee (CORC) within five (5) days of receipt of the recommendation by the IGS, in accordance with "Step Three."

ii.  Institutional Issue - In all institutional matters, the Commanding Officer, or designee, shall render a decision on the grievance within five (5) days from the time the appeal was received on the "Warden's Decision" form (Form #7103R, Attachment J). The Commanding Officer, or designee, shall forward a copy of the decision and all accompanying documentation to the IGS within one (1) day after the decision was made. The IGS shall then forward the decision and all accompanying documentation to the grievant within five (5) days of receipt of the documentation.

416R

| | EFFECTIVE DATE<br>**03/13/08** | SUBJECT<br>**INMATE GRIEVANCE RESOLUTION PROGRAM** |  |
|---|---|---|---|
| | CLASSIFICATION #<br>**3375R-A** | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES  [ ] NO | PAGE **12** OF<br>**16** PAGES |

## IV.  PROCEDURE (cont.)

  c.  Filing an Appeal - Within five (5) days after receipt of the Commanding Officer's or designee's written response to the grievance, the inmate may appeal the Commanding Officer's action to the CORC by filing an appeal, (found on the bottom of Form #7103R) with the facility Grievance Office. The facility Grievance Office shall date and time-stamp the appeal. The Executive Director of the IGRP shall forward the appeal papers to CORC within five (5) days after receipt of the decision.

  d.  Extension to File an Appeal - Where the grievant in DOC's custody demonstrates a valid reason for delay, an extension in filing time for an appeal may be allowed by the CORC. In general, a valid reason for delay means a situation in which the grievant was prevented by circumstances beyond his/her control from submitting the appeal within the established time frame.

 3.  THIRD STEP - APPEAL TO THE CENTRAL OFFICE REVIEW COMMITTEE (CORC)

  a.  The CORC - the CORC shall consist of the Commanding Officer of the Office of Policy and Compliance (OPC), the Chief of Facility Operations, the Chief of Custody Management & Environmental Health, the General Counsel, Deputy Commissioner for Programs and Discharge Planning, or their designees.  The Executive Director acts as a facilitator, but is not a voting member of CORC.  CORC provides dispositions on grievances appealed.  The CORC functions on behalf of the Commissioner and under his/her authority.  The Executive Director of the IGRP is responsible for the administrative function of the IGRP.  The Executive Director of the IGRP, as the Commissioner's designee, must ensure implementation of CORC decisions.

  b.  CORC Action - The CORC shall review each appeal that it receives, render a decision on the appeal, and transmit its decision to the IGS on the "Disposition of the Central Office Review Committee Form"(Form #7105R, Attachment K). The IGS shall then transmit the CORC decision to the grievant, the Commanding Officer or designee and any other appropriate party within the time periods stated below.

   i.  Informal Meeting/Review and Decision by CORC - If in the opinion of the IGRP Executive Director, or designee the appeal may not require a full CORC meeting to resolve the grievance, then the Executive Director of the IGRP or designee may first process the CORC appeal informally, as described:

416R

| | EFFECTIVE DATE **03/13/08** | SUBJECT **INMATE GRIEVANCE RESOLUTION PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3375R-A** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **13** OF **16** PAGES |

### IV.  PROCEDURE (cont.)

The Executive Director of the IGRP and/or appropriate IGRP staff shall forward the appeal documents to each member of the CORC for review and decision. The  CORC shall endeavor to reach a unanimous decision.  Each member must fill out the appropriate form indicating recommendations and forward the form to the Executive Director.  Any unanimous CORC decision shall be transmitted to all appropriate parties on the "Disposition of the Central Office Review Committee" (Form #7105R), within five (5) days of receipt of the CORC decision by the Executive Director.  In the event the decision is not unanimous, a formal meeting/review and decision must occur.

ii.  Formal Meeting/Review and Decision by CORC - CORC meetings where the full committee meets and decides an appeal.  All decisions and findings require a majority vote of the members of the committee.  Formal CORC meetings shall occur in the following circumstances:

- Unresolved Informal CORC Hearing - Where there is no unanimous informal decision, the CORC shall submit a majority decision within ten (10) days of receipt of the appeal on the "Disposition of the Central Office Review Committee" (Form #7105R).

- Departmental Issue - If the matter concerns the revision of a departmental policy, directive or procedure, the CORC shall submit a majority decision within fifteen (15) days of receipt of the appeal on the aforementioned form.

c.  Procedure for Filing an Appeal

i.  Filing an Appeal - Within five (5) days after receipt of the CORC decision, the grievant may appeal the CORC decision to the NYC Board of Correction (BOC) by filing an appeal with the Grievance Office (found on the bottom of Form #7105R).  Upon receipt of a signed appeal statement, the Grievance Office shall forward the disposition of CORC and the appeal to the  BOC within two (2) days.

416R

| | EFFECTIVE DATE<br>**03/13/08** | SUBJECT<br>**INMATE GRIEVANCE RESOLUTION PROGRAM** | | |
|---|---|---|---|---|
| | CLASSIFICATION #<br>**3375R-A** | | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES  [ ] NO | PAGE **14** OF<br>**16** PAGES | |

## IV.  PROCEDURE (cont.)

         ii.    Extension to File an Appeal - Where the grievant demonstrates a valid reason for delay, an extension in filing time for an appeal may be allowed by the Executive Director of the IGRP. In general, a valid reason for delay means a situation in which the grievant is prevented by circumstances beyond his/her control from submitting the appeal within the established time frame.

    **4.**    **FOURTH STEP - APPEAL TO THE NYC BOC**

        a.    NYC BOC Action for Commissioner Decision - NYC BOC shall forward its findings and non-binding recommendations to the Commissioner within twenty (20) days for action and response.

        b.    Commissioner's Action and Response - Within twenty (20) days of receipt of the NYC BOC action and response, the Commissioner shall respond to the NYC BOC on a " Commissioner's Decision" form (Form # 7106R, Attachment K). The Commissioner's decision is final. A copy of the "Commissioner's Decision" Form is to be transmitted to the Executive Director of the IGRP to be forwarded to the appropriate IGS for immediate delivery to the grievant. The Executive Director of the IGRP shall also forward the "Commissioner's Decision" form to the appropriate Commanding Officer for notification, action and implementation, if warranted.

### C.  PROCEDURAL SAFEGUARDS

    1.    Reprisals Prohibited - No reprisals of any kind shall be taken against an inmate for good faith utilization of the grievance procedure. An inmate may file a grievance that a reprisal occurred through the grievance program.

    2.    Objection to IGR and/or IGC - No inmate will take part in the resolution of a grievance over the grievant's objection. If an inmate grievant objects to both the IGR and the IGC, then the USR and the IGS shall hold the hearing and provide a recommendation. Inmates who are members of the IGRC shall not function as a voting representative at a hearing on their own grievance. In the case of an IGR, an alternate IGR may be utilized. Staff who are members of the IGRC shall not function as a voting representative at a hearing on a grievance in which that staff member is a direct party. An alternate staff member must be utilized.

    3.    File Maintenance/Confidentiality - Grievance files will be locked and maintained in a specific area to be used by each IGRC staff. Grievance documents shall not be routinely available to employees or inmates not assigned to the IGRC. No copies of grievance documents may go into the grievant's Inmate Record Folder without the grievant's written consent.

416R

| | EFFECTIVE DATE **03/13/08** | SUBJECT **INMATE GRIEVANCE RESOLUTION PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3375R-A** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **15** OF **16** PAGES |

## IV. PROCEDURE (cont.)

4. Integrity of the IGRC - Uniformed Staff Representatives shall not be assigned duties that could potentially conflict with their ability to independently evaluate grievances, nor shall they serve in roles in which they are likely to be the subject of an inmate grievance. In the event that the uniformed representative is involved in any manner with an inmate grievance, the uniformed representative must recuse himself/herself from dealing the IGRC duties in that matter.

5. Requests for Time Limit Extensions by DOC - Time limit extensions may be requested by the IGRC, the Commanding Officer, or designee, depending on the level of review, but such extensions may only be granted with the written consent of the grievant. Failure by the DOC to request an extension shall not affect the validity of a decision, or serve as grounds for an appeal, if the inmate did not appeal the delay prior to the decision being rendered.

6. Grievance Appeals - Grievances not decided within the time limitations may be appealed to the next step, if no extension has been granted. To effect an appeal, the inmate should go to the Grievance Office to sign and submit the appropriate appeal form. Any inmate confined to a cell must request the appropriate appeal from the Grievance Coordinator and follow the procedure indicated in the previous sentence.

7. Emergencies - the IGS shall refer any grievance of an emergency nature directly to the Commanding Officer, or designee with the authority to ensure an expeditious response. An emergency shall include, but is not limited to, a situation in which an inmate's health, safety, or welfare is at risk.

8. IGRC Access to Information - Grievance Supervisors and Staff Representatives shall have access to all records and documents within the facility necessary for the resolution of grievances, except where prohibited for confidentiality or security reasons. Should the Warden determine that the release of specific information poses a threat to the safety or security of the facility or is confidential, said information may be withheld. However, within one (1) day, the Warden or designee shall document the withholding of information and the reasons thereto, for submission to the Executive Director of the IGRP.

## V. REFERENCES

A. Directive #3377, entitled "Due Process For IGRC Inmate Representatives," dated 01/23/89.

B. Directive #3802, entitled "Reasonable Accommodation For Inmates With Disabilities," dated 12/15/05.

416R



| EFFECTIVE DATE<br>**03/13/08** | SUBJECT | |
|---|---|---|
| CLASSIFICATION #<br>**3375R-A** | **INMATE GRIEVANCE RESOLUTION PROGRAM** | |
| DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] **YES**  [ ] **NO** | PAGE **16** OF<br>**16** PAGES |

## V.  REFERENCES (cont.)

C.  Directive #4014R-A, entitled "Inmate Incentive Pay Plan," dated 04/11/07 (as amended).

D.  Directive #5000R-A, entitled "Reporting Unusual Incidents," dated 11/19/04 (as amended).

E.  Operations Order #28/89, entitled "Identification Of Hearing Impaired/Deaf Mute Inmates," dated 06/19/89 (as amended).

F.  Operations Order #14/91, entitled "Awarding Job Assignments Within A Command," dated 04/02/91.


## VI.  ATTACHMENTS

A.  Inmate Report of an Alleged Assault/Harassment (Form #7316R)

B.  IGRP Code of Ethics (Form #7113R)

C.  Formal Hearing Complaint Dismissal Form (Form #7115R)

D.  Inmate Interview Slip (Form #143)

E.  Inmate Grievance Form (Form #7101R)

F.  Investigation Form (Form #7112R)

G.  Non-Grievable Complaint (Form #7114R)

H.  Hearing Notice (Form #7102R)

I.  Transmittal to CORC (Form #7104R)

J.  Warden's Decision (Form #7103R)

K.  Disposition of the Central Office Review Committee (Form #7105R)

L.  Commissioner's Decision (Form #7106R)


## VII.  SUPERSEDES

Directive #3375R, entitled, "Inmate Grievance Resolution Program," dated 03/04/85.

**ATTACHMENT A**

### Department of Correction-Interdepartmental Memorandum

### <u>INMATE GRIEVANCE RESOLUTION PROGRAM</u>

Form: #7316R

**Date**     :

**To**       :

**From**    :

**Subject**   :    **INMATE REPORT OF AN ALLEGED ASSAULT/HARASSMENT**

This memorandum is to inform you that _____

NYSID # _____ contacted this office on _____ ___ ___ ___ ___ _____ and

Informed members of the Committee that he was assaulted/harassed on _____.

This information is being forwarded to you because allegations of assault/harassment are not within the jurisdiction of the IGRP pursuant to Directive #3375R-A, Section III (C)(2).

You may wish to contact the inmate or additional details of the allegation.

_____
Grievance Supervisor

C: Executive Director
   File

# INMATE GRIEVANCE RESOLUTION PROGRAM

Form #7113R

**ATTACHMENT B**                    **CODE OF ETHICS**

The Code of Ethics for Inmate Representatives, Grievance Clerks, Inmate Housing Aides and other Grievance Committee members Chairpersons has been established to strengthen the credibility and effectiveness of the Inmate Grievance Resolution Committee.

A. Members shall not obstruct an inmate from exercising his/her right to file a grievance.

B. Members shall demonstrate a willing and tactful attitude in the performance of their duties.

C. Members shall not expect or receive preferential treatment because of his or her participation in the IGRC.

D. Members shall not abuse their particular duties, responsibilities or assignments.

E. Members shall be responsible for safekeeping of grievance files and ensuring against their unauthorized use.

F. Members shall not intentionally undermine the IGRC's operations or credibility.

G. Members of the IGRC shall have a working knowledge of the program and of their responsibilities as members.

H. Members shall not violate Department rules and regulations.

I have read, understood and shall abide by the above Code of Ethics. My signature below indicates acknowledgement of my right to a Due Process hearing should I violate any of the above ethics.

_____          _____
Signature                                Date


_____          _____
Witness                                  Date

**ATTACHMENT C**

THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION

Form #7115R

INMATE GRIEVANCE RESOLUTION PROGRAM

**FORMAL HEARING COMPLAINT**
**DISMISSAL FORM**

_____          _____          _____
   GRIEVANCE #                  DATE FILED                   HEARING DATE


_____          _____          _____
    INMATE                   BOOK & CASE #                  FACILITY


                    _____
                        NYSID #

   The Inmate Grievance Resolution Committee (IGRP) has conducted
a formal hearing on your grievance.

   The IGRC has determined by majority vote that your complaint
is "non-grievable" pursuant to Department Directive #3375R-A, Inmate
Grievance Resolution Program (IGRP), Section _____ _____.
This section states that _____
_____
_____
_____
_____

   You are advised to contact the following Department Unit(s)
and/or agency to redress your complaint: _____ _____
_____
_____
_____

Signed:

_____          _____          _____          _____
Staff Representative                Date              Inmate Representation              Date

_____          _____          _____          _____
Staff Representative                Date              Inmate Representation              Date

(Continued next a page)

Page 1 of 2

-2-

Form #7115R

## NOTICE TO GRIEVANT

If you believe that a dismissal in your case is not authorized by Directive #3375R-A, you may appeal directly to the IGRP Executive Director for review by signing below.  The IGRP Executive Director or designee shall render a determination within five working days. Should the IGRP Executive Director accept your appeal, the IGRC shall reconvene the formal hearing within five working days of receipt of the IGRP Executive Director's determination.

_____     _____
GRIEVANT'S SIGNATURE                         DATE


_____     _____
GRIEVANT'S CLERK'S SIGNATURE             DATE

I accept the IGRC's determination and do not wish to appeal To the IGRP Executive Director.

_____     _____
GRIEVANT'S SIGNATURE                         DATE


_____     _____
GRIEVANT'S CLERK'S SIGNATURE             DATE


C:  Files

Page 2 of 2

**ATTACHMENT D**

143          CITY OF NEW YORK
          DEPARTMENT OF CORRECTION

                    ................  20.........

To ...............................................................

          Please grant me an interview regarding ...............

...................................................................

...................................................................

...................................................................

...................................................................

...................................................................

...................................................................

Name .............................................................

Comm. No.............CB......Tier..........Cell....................

Work Assignment...................................................

**State briefly what you wish to discuss.**
**Do not use any other form.   Do not use envelope.**
**Deposit this slip in the mailbox as you do your outgoing mail.**
**If space is not sufficient use other side.**
**You will not be called unless your request merits consideration.**

**Inmates:  Do not Write Below This Line**


Interview held by ................................................

Disposition  .....................................................

...................................................................

...................................................................

Signed ...........................................................

Title ............................................................

CITY OF NEW YORK – DEPARTMENT OF CORRECTION

Form #7101R

**ATTACHMENT E**          **INMATE GRIEVANCE FORM**

Facility _____ Grievance No. _____ Date_____ Housing Unit _____

Name_____ Book and Case # _____ NYSID # _____

Please describe problem as briefly as possible (Please Print or Type)._____

_____

_____

_____

_____

_____

Action Requested by Inmate:_____

_____

_____

Advisor/Interpreter requested: _____ Yes _____ No    Who _____
Have you filed this grievance with any other investigative body or court?_____ Yes _____ No
If yes, specify:_____

Grievants' Signature _____

Grievance Aide _____

The IGRC proposes to informally resolve your grievance as follows:_____

_____

_____

_____

_____

Representative Signatures

This informal resolution is accepted: _____
                                    Grievants' Signature

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee.
I request a hearing of my grievance by the IGRC _____Yes _____ No

_____
Grievants' Signature

Page 1 of 2

Form #7101R

Hearing Recommendations:

_____
_____
_____
_____

Date returned to inmate: _____    IGRC Members: _____
                                                           _____
                                                           _____
                                                           _____

Return within one day of receipt and check appropriate boxes.

A.   (   )   I agree with the IGRC recommendation.

B.   (   )   I disagree with the IGRC recommendation.

C.   (   )   I wish to appeal to the Warden.


_____                    _____
Greivant's Signature                           Date


_____                    _____
Greivance Aide Signature                       Date


To be completed by Grievance Coordinator (Check only one box).

(   )   Grievance appealed to Warden           _____
                                               Date

(   )   Grievance forwarded to the Warden for action upon IGRC recommendation
                                               _____
                                               Date

(   )   Grievance not forwarded to Warden (explain):

_____
_____
_____
_____


                                               _____
                                               Supervisor's Signature

Page 2 of 2

### INVESTIGATION FORM       ATTACHMENT F

Form #7112R

NAME _____   B&C #_____   **HOUSING**
**AREA** _____

GRIEVANCE #_____   NYSID#_____

DATE_____   TIME _____

ISSUE: _____ _____
_____
_____

ACTION REQUESTED: _____
_____
_____

PERSON CONTACTED: _____
_____
_____
_____

STATEMENT PROVIDED: _____
_____
_____
_____
_____
_____

RELATED DOCUMENTS: _____
_____
_____
_____

CONCLUSION: _____
_____
_____
_____
_____
_____
_____

DATE IMPLEMENTED: _____
COMMITTEE MEMBERS _____
_____
_____

**ATTACHMENT G**              The City of New York
                           Department of Correction

                                              FORM: 7114R

### INMATE GRIEVANCE RESOLUTION COMMITTEE

Date:

To:

From:

Subject :   **NON-GRIEVABLE COMPLAINT**


On _____ the IGRC received your complaint.  The purpose of this memo is to inform you that the complaint submitted by you have been determined by this committee to be a non-grievable complaint as outlined in Directive #3375R-A, thus not falling within the jurisdiction of the Inmate Grievance Resolution Committee (IGRC).  The reason that your complaint is non-grievable is:

_____ that the matter does not fall under the purview of the IGRP.

_____ that the matter pertains an alleged assault/ harassment

_____ that the matter has been filed with another Agency, court or the Inspector General's office.
_____ that the matter is in litigation.

_____ that the action requested is to censor, discipline or remove a staff person from an assignment and that is beyond the purview of the IGRC as per the DISPOSITION OF THE CENTRAL OFFICE REVIEW COMMITTEE (Form #7105R).

_____ that there is already an existing appeal mechanism within the Department of Correction.

_____ that it is a matter outside the jurisdiction of the Department of Correction.

_____ that the complaint does not directly affect the grievant.

Comments _____
         _____
         _____


_____                        _____
Inmate Signature                        Grievance Supervisor

C: Warden
   Program Administrator
   Files

INMATE GRIEVANCE PROGRAM
HEARING NOTICE

**ATTACHMENT H**

Form #7102R

_____      _____      _____
Grievance #          Title                    Date

THE GRIEVANCE COMITTEE IS CONDUCTING A HEARING ON THE ABOVE. IT IS
REQUESTED THAT YOU ATTEND THE HEARING THAT WILL BE CONDUCTED IN
AN ATTEMPT TO RESOLVE THE MATTER REFERENCED ABOVE.

NAME OF PERSON TO APPEAR: _____

DATE OF HEARING: _____

TIME OF HEARING: _____

PLACE OF HEARING: _____

PLEASE INDICATE IF YOU WILL BE PRESENT:          _____ YES          _____ NO

   If no, please check: the appropriate box:
      [ ]   I wish to withdraw grievance
      [ ]   Hearing scheduled on court day
      [ ]   Other (specify) _____

         _____
         _____

PLEASE NOTE THAT THREE (3) REFUSALS TO ATTEND A SCHEDULED HEARING
FOR REASONS OTHER THAN MEDICAL OR COURT PROCEEDINGS WILL RESULT
IN AUTOMATIC WITHDRAWAL OF YOUR GRIEVANCE.

_____      _____      _____
Grievant's Signature       Date               Witness

**ATTACHMENT I**

| The City of New York<br>Department of Correction<br>INMATE GRIEVANCE RESOLUTION PROGRAM<br><br>TRANSMITTAL TO CORC<br>Form #7104R | Grievance #: | Transmittal Date |
|---|---|---|
| | Facility | Policy Designation |
| | Title of Grievance | Category |
| | Supervisor's Signature | |

Grievance:

IGRC:

Warden:

**ATTACHMENT J**

| | Grievance #: | Date Filed |
|---|---|---|
| The City of New York<br>Department of Correction<br>INMATE GRIEVANCE RESOLUTION PROGRAM<br><br>WARDEN'S DECISION<br>Form #7103R | Facility | Policy Designation |
| | Title of Grievance | Category |

The Grievant's request is

☐ Accepted   ☐ Rejected   ☐ Modified

The IGRC Recommendation is

☐ Accepted   ☐ Rejected   ☐ Modified

_____     _____
Warden's Signature                Date

## NOTICE TO GRIEVANT

This decision is a departmental/institutional grievance which does not need/needs your signature in order to be appealed to the CORC. A departmental grievance will automatically be forwarded to the CORC. If you wish to appeal an institutional decision of the Warden, please sign below and return this copy to your inmate Grievance Clerk. You have 5 days from receipt of this notice to file your appeal.

_____     _____
Grievant's Signature             Date

_____     _____
Grievance Clerk's Signature       Date

I accept the Warden's decision and do not wish to appeal to the CORC.

_____     _____
Grievant's Signature             Date

_____     _____
Grievance Clerk's Signature       Date

**ATTACHMENT K**

| The City of New York | Facility | Policy Designation |
|---|---|---|
| Department of Correction | | |
| INMATE GRIEVANCE RESOLUTION PROGRAM | Title of Grievance | Category |
| DISPOSITION OF THE | | |
| CENTRAL OFFICE REVIEW COMMITTEE | Reviewed by Executive Director | Date |
| Form #7105R | | |

The Grievant's request is

☐ Accepted          ☐ Rejected          ☐ Modified

_____          _____
Deputy Commissioner                          Date

---

## APPEAL STATEMENT

If you wish to appeal the above decision of the Central Office Review Committee, please sign below and return this copy to your inmate Grievance Clerk. You have five (5) days from receipt of this notice to file your appeal. Please state why you are appealing this decision:

_____
_____
_____
_____
_____
_____
_____

_____          _____
Grievant's Signature                          Date

_____          _____
Grievance Clerk's Signature                     Date

**ATTACHMENT L**

| The City of New York<br>Department of Correction<br>INMATE GRIEVANCE RESOLUTION PROGRAM<br><br>COMMISSIONER'S DECISION<br>Form #7106R | Facility: | Policy Designation |
|---|---|---|
| | Title of Grievance | Category |

The grievant's request is

☐ Accepted      ☐ Rejected

The Board of Correction/Arbitrator recommendation is:

☐ Accepted      ☐ Rejected

415R



THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION

# DIRECTIVE



| [X] NEW          [ ] INTERIM          [ ] REVISED | SUBJECT |
|---|---|
| EFFECTIVE DATE                    *TERMINATION DATE<br>09/10/12 | **INMATE GRIEVANCE AND REQUEST PROGRAM** |

| CLASSIFICATION #<br>3376 | SUPERSEDES<br>3375R-A | DATED<br>03/13/08 | APPROVED FOR WEB POSTING<br>[X] YES   [ ] NO | DISTRIBUTION<br>A & B | PAGE 1<br>OF 33 PAGES |
|---|---|---|---|---|---|

| RECOMMENDED FOR APPROVAL BY REVIEW BOARD MEMBER | AUTHORIZED BY THE COMMISSIONER |
|---|---|
| *[signature]*<br>MICHAEL HOURIHANE, CHIEF OF DEPARTMENT       SIGNATURE | *[signature]*<br>DORA B. SCHRIRO                                SIGNATURE |

## I.   PURPOSE

The Inmate Grievance and Request Program (IGRP) provides inmates with the opportunity to resolve issues regarding their confinement through a structured, non-adversarial, and expedient process.  The IGRP is designed to solve problems, reduce conflict and litigation, and provide the New York City Department of Correction (Department) with information concerning facility operations that will help it maintain a safe and secure environment. The IGRP affords inmates access to information and services relating to their confinement and assists inmates who request information, services, assistance, or accommodations.

## II.   POLICY

A.   Any inmate who is directly and personally affected by an issue, condition, practice, or action relating to the inmate's confinement may file a complaint (grievance) or request a service, assistance, or an accommodation with regard to any issue that may arise in connection with his or her incarceration.  The IGRP staff shall review each grievance and request for resolution in accordance with this directive.  If an inmate's submission raises issues that cannot be fully resolved through the IGRP process, IGRP staff shall refer such submission to the appropriate entity for resolution, as described in Section IV.B.2, below.  An inmate *must* utilize the IGRP process in order to obtain a final response from the Department with regard to any grievance or request, unless there is an identified alternative process for resolving a particular issue as set forth in Appendix A.

B.   Whenever feasible, an inmate is encouraged to seek assistance with regard to any issue that may arise in connection with his or her incarceration directly with facility staff, the relevant program unit, or other existing channels prior to filing a grievance or request with the IGRP.  However, an inmate is not required to seek such assistance as a pre-condition to filing a grievance or request.

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **2** OF **33** PAGES | |

## II.   POLICY (cont.)

C.   The IGRP shall receive, document, and maintain records, including correspondence, investigations and dispositions, regarding all inmate grievances, requests, and submissions not subject to the IGRP process. The IGRP shall process all grievances, requests, and submissions not subject to the IGRP process in a timely manner. If the IGRP receives a submission that it determines is not subject to the IGRP process, the IGRP shall provide the inmate with a written decision documenting the reason it is not subject to the IGRP, as set forth in Section IV.B.2, below. IGRP staff shall not prevent an inmate from filing a grievance on the ground that they believe it not to be subject to the IGRP process.

D.   The Department shall provide information to all inmates regarding the IGRP through the Inmate Handbook, posters displayed in congregate areas, and new-admission orientation.

E.   As a matter of law, an inmate is often required to "exhaust administrative remedies" such as those available through the IGRP before seeking relief from the judicial system or any other external agency.   Failure to file a grievance or request with the IGRP may prevent an inmate from seeking external relief.

F.   To file a request or grievance, the inmate is required to use the IGRP Statement Form (Form 7101R, Attachment B) to submit his/her request or grievance.  If a request or grievance is not submitted on the proper form, IRGP staff shall provide the form as described in Section IV.D.4, below.  Upon completion of the IGRP Statement Form, the inmate shall: (1) deposit the form into a "grievance and request box," located in the inmate's housing area or other common area, (2) personally deliver it to the IGRP Office, or (3) for inmates in punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas who cannot directly access a grievance and request box or the IGRP office, give it to IGRP staff during IGRP staff visits to housing areas. The IGRP shall provide the inmate with a receipt as proof of filing within two business days of receiving the form. The IGRP shall provide an informal resolution (section IV.G.5) within five business days of receiving the form.  If the inmate is not satisfied with the informal resolution that IGRP staff provides, the inmate can appeal the resolution.

G.   For all grievances and requests (other than those requesting to exercise religious beliefs and practices), the inmate may appeal the IGRP's informal resolution or proposed jurisdictional determination to and request a formal hearing before the Inmate Grievance Resolution Committee. The inmate may appeal the Inmate Grievance Resolution Committee's disposition to the facility's Commanding Officer, and the Commanding Officer's disposition to the Central Office Review Committee (CORC).  The CORC's disposition shall constitute

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | |  |
|---|---|---|---|---|
| | CLASSIFICATION # **3376** | | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES   [ ] NO | PAGE **3** OF **33** PAGES | |

## II.   POLICY (cont.)

the Department's final decision on the inmate's request or grievance.   The IGRP executive director shall provide a copy of the CORC decision to the Board of Correction.

H.   Inmates may request to exercise religious beliefs and practices not currently available in the facility through the IGRP. The facility's grievance supervisor shall refer requests of a religious nature to the administrative chaplain. The administrative chaplain shall, if necessary, interview the inmate. If the request can be resolved, the administrative chaplain shall notify the grievance supervisor and the director of ministerial services of the resolution of the request. If the request cannot be resolved informally, then the director of ministerial services shall submit the request in writing to the Committee on Religious Accommodations for resolution in accordance with Directive 3261, Access to Religious Programs and Practices.

I.   The Assistant Commissioner of Skills Development and Program Services has overall responsibility for the sound management of the IGRP program, including the coordination of efforts directed at ensuring the integrity and effectiveness of the IGRP staff assigned to the Department's housing facilities. The executive director of the IGRP program is in charge of day-to-day IGRP operations and implementation of this directive.

## III.   DEFINITIONS

A.   GRIEVANCE – A grievance is a written complaint submitted by an inmate in the Department's custody about an issue, condition, practice or action relating to the inmate's confinement. This complaint can be related to the impact of a Department policy or protocol or a facility policy or protocol or to a particular action affecting an inmate. To file a grievance, the inmate shall complete the IGRP Statement Form (Form 7101R, Attachment B).

B.   REQUEST – A request is a written, individually expressed need or desire for a service, assistance, or an accommodation relating to the inmate's confinement. Depending on the type of the request, the request may be subject to the IGRP process.   To file a request, the inmate shall complete the IGRP Statement Form (Form 7101R, Attachment B).

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES   [ ] NO | PAGE **4** OF **33** PAGES |

## IV.    PROCEDURE

   A.    IGRP DOCUMENTATION AND RECORDKEEPING

      1.    The IGRP shall receive, file, date and time-stamp all submissions to the IGRP and all other IGRP documents; provide IGRP Statement Forms to inmates who submitted a grievance or request on forms other than the IGRP Statement Forms; provide receipts to inmates who file completed IGRP Statement Forms; maintain paper and electronic records of all grievances, requests, submissions not subject to the IGRP process and all related correspondence, including investigations, dismissals, referrals, resolutions, appeals, and dispositions; enter data and related updates into the IGRP database; and process all grievances, requests, and submissions not subject to the IGRP process in a timely manner. The IGRP executive director shall monitor IGRP database entries for accuracy.

   B.    IGRP JURISDICTION

      1.    Personal and Direct Impact on Individual Inmate

         An inmate must be personally and directly affected by the issue, condition, practice, or action, about which the inmate files a grievance or request. The issue, condition, practice or action about which the inmate files a grievance or request must have affected the inmate personally and directly at some point during the ten business days of confinement immediately prior to the filing of the grievance or request. Inmates must file grievances or requests in an individual capacity. Inmates cannot institute class actions on behalf of all inmates or a class of inmates through the IGRP.

         a.    If multiple inmates believe that they have been aggrieved by the same or similar issues, conditions, practices or actions, and file individual grievances or requests concerning the issues, conditions, practices or actions, the IGRP's executive director may consolidate the resolution of these individual grievances or requests.

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3376** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **5** OF **33** PAGES |

## IV.  PROCEDURE (cont.)

2. Submissions Not Subject to IGRP Process

When IGRP staff receive submissions not subject to the IGRP process (see Appendix A, Attachment A), IGRP staff shall forward the complaint or request to the appropriate entity for review and resolution.  IGRP staff shall complete the IGRP Disposition Form (Form 7102R, Attachment C) and provide it to the inmate; the form should explain the referral and instruct the inmate concerning the process' next steps.  IGRP staff shall also enter all information from the IGRP Disposition Form into the IGRP database.

Matters that are otherwise subject to the IGRP process are not excluded from it even if they are also under investigation or consideration by the Investigation Division, the Department of Investigation (DOI),  a court, or another entity outside of the Department.

a. Independent Administrative or Investigative Process

The dispositions stemming from a program or procedure that has its own departmental administrative or investigative process are not subject to the IGRP process.

Departmental administrative and investigative dispositions not subject to the IGRP process include, but are not limited to, the inmate disciplinary process and dispositions, requests for accommodation due to disability or claims of discrimination based on disability or perceived disability, intended contraband recipient status, centrally monitored case (CMC) status, red identification status, enhanced restraint status, uses of force, and Freedom of Information Law (FOIL) requests.

b. Allegations of Assault or Harassment

Inmate allegations of physical or sexual assault or harassment by either staff or inmates are not subject to the IGRP process.  However, IGRP staff shall immediately and appropriately refer such allegations, record reports of such allegations on the IGRP Inmate Report of an Alleged Assault/Harassment (Form 7316R, Attachment D), and enter information from the report into the IGRP database.  IGRP staff shall also complete the IGRP Disposition Form and provide it to the inmate as described in Section IV.B.2, above.

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **6** OF **33** PAGES | |

## IV.   PROCEDURE (cont.)

    i.    In accordance with Directive 5010R-A, Preventing Inmate Sexual Abuse, IGRP staff shall immediately refer allegations of staff-on-inmate sexual abuse or sexual threats to the tour commander or the Department of Investigation. Additionally, IGRP staff shall immediately refer allegations of inmate-on-inmate sexual abuse or sexual threats to the tour commander.

    ii.    IGRP staff shall refer allegations of staff-on-inmate use of force or harassment to the commanding officer. IGRP staff shall hand-deliver the completed IGRP Inmate Report of an Alleged Assault/Harassment, (Form 7316R, Attachment D) along with any relevant documentation submitted by the inmate, to the office of the commanding officer on the day of receipt.

    iii.    While IGRP staff shall refer allegations of staff-on-inmate harassment or other misconduct to the facility's commanding officer, IGRP staff should receive and consider all allegations in submissions that are otherwise subject to the IGRP process. For example, if an inmate complains that an officer denied the inmate access to telephones, the IGRP shall accept and process as a grievance the inmate's alleged inability to access the telephones. However, the IGRP staff should forward the officer's alleged misconduct to the commanding officer.

  c.  Staff Discipline

    Requests for the removal of a Department employee from an assignment, or the censure, discipline or termination of a Department employee are not subject to the IGRP process. The grievance or request, including any substantive issue that prompted such a request, will otherwise be processed in the ordinary course as described in this directive. The IGRP staff shall forward the complaint seeking discipline of staff to the staff member's commanding officer.

  d.  Matters Outside the Department's Jurisdiction

    Grievances or requests concerning matters outside the Department's jurisdiction, or over which the Department has no authority are not subject to the IGRP process.



| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3376** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES   [ ] NO | PAGE **7** OF **33** PAGES |

## IV.   PROCEDURE (cont.)

For example, grievances or requests concerning the actions of medical personnel are not within the Department's jurisdiction because medical personnel are employed by a private company under the supervision of the Department of Health and Mental Hygiene (DOHMH).  On the other hand, grievances or requests concerning correctional staff's alleged interference with medical treatment or access to medical care are within the Department's jurisdiction.  See Section V, below.

C.   IGRP STAFFING

1.   IGRP Executive Director

a.   The IGRP's executive director or the executive director's designee shall assign duties and tasks to grievance supervisors.

i.   The executive director is responsible for the day-to-day administration of the IGRP in all Department housing facilities and for ensuring that the IGRP operates in compliance with this directive. The executive director shall convene the Central Office Review Committee (CORC), conduct and supervise quarterly IGRP staff meetings, prepare monthly statistical data on grievances and requests, and, where appropriate, participate in grievances and request investigations.

b.   The field operations investigator is a correction officer or civilian investigator who is assigned to the IGRP's executive director and shall assist, as assigned by the executive director, in completing investigative and administrative tasks to fulfill the IGRP's mission.

2.   Grievance Supervisor

The grievance supervisor is a civilian employee of the Department assigned and selected by the IGRP's executive director. The grievance supervisor shall be responsible for the administration of the IGRP in each housing facility to which the grievance supervisor is assigned and for ensuring that the IGRP operates in compliance with this directive. The grievance supervisor directly supervises uniformed staff and inmates assigned to the IGRP in the processing of grievances and requests.   The grievance supervisor chairs Inmate Grievance Resolution Committee hearings, conducts and supervises quarterly inmate-representative elections, prepares monthly statistical data on grievances and requests for submission to the facility's commanding officer and

416R



| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT<br>**INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
| | CLASSIFICATION #<br>**3376** | | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] **YES**  [ ] **NO** | PAGE **8** OF<br>**33** PAGES | |

## IV.   PROCEDURE (cont.)

IGRP executive director and, where appropriate, participates in grievance and request investigations.

a.   Grievance supervisors shall not be assigned duties that could potentially conflict with their ability to independently evaluate grievances, nor shall they serve in roles in which they are likely to be the subject of an inmate grievance.  In the event that the grievance supervisor is involved in any manner with an inmate grievance, the grievance supervisor must recuse himself/herself from handling any IGRP or Inmate Grievance Resolution Committee duties concerning that matter.

3.   Inmate Grievance Resolution Committee

A facility's Inmate Grievance Resolution Committee is a three-member body consisting of one inmate grievance representative, one uniformed staff representative, and one grievance supervisor.   This committee resolves grievances and requests through a formal hearing as described in section IV.H.

a.   Inmate Grievance Representative

The inmate grievance representative is a voting member of the Inmate Grievance Resolution Committee who is responsible for assisting in the clerical processing of grievances and requests and aiding uniformed staff representatives and civilian grievance staff in fact-finding investigations. Inmate grievance representatives shall not hold joint membership on the Inmate Council.   Inmate grievance representatives are not permitted access to inmate-restricted areas.

i.   Election of Inmate Grievance Representative

Inmate grievance representative elections shall be conducted at quarterly intervals.   At each facility, one inmate grievance representative and two alternates shall be elected by their peers and paid as skilled workers in accordance with Directive 4014R-A, Inmate Incentive Pay Plan (or its successor) and in consultation with the facility Inmate Assignment Office. Elected inmate grievance representatives shall not be transferred to another facility during their term as inmate grievance representative, absent an emergency or change in classification or other good cause, and shall not serve more than three consecutive terms of 90 days at a single facility.

416R



| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT<br>**INMATE GRIEVANCE AND REQUEST PROGRAM** | |
| --- | --- | --- | --- |
| | CLASSIFICATION #<br>**3376** | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES   [ ] NO | PAGE **9** OF<br>**33** PAGES |

## IV.   PROCEDURE (cont.)

      ii.    The alternate inmate grievance representatives are those inmates placing second and third in the most recent election.  Alternate inmate grievance representatives may be utilized to fill an inmate grievance representative vacancy between elections.

      iii.    The grievance supervisor, working collaboratively with the deputy warden for programs, shall conspicuously post the approved nomination and election procedures in the housing areas and inmate congregate areas at least five days prior to commencement of the nomination process.  All nominees are subject to security clearance by the commanding officer, which must be completed within seven business days from the date their names are submitted as nominees.  The grievance supervisor, working collaboratively with the deputy warden for programs, shall post the names of cleared nominees conspicuously in inmate congregate areas for five business days prior to the scheduled election.

      iv.    Removal or Transfer of Inmate Grievance Representatives

           Removal or transfer of an inmate grievance representative must be conducted in accordance with section IV of Directive 3377, Due Process for IGRC Inmate Representatives, or its successor.

  b.    Inmate Grievance Clerk

      The grievance supervisor shall select an inmate for the position of inmate grievance clerk, who shall be paid as a skilled worker in accordance with Directive 4014R-A (or its successor) and in consultation with the Inmate Assignment Office.  The grievance supervisor shall determine the duties of the inmate grievance clerk.  The inmate grievance clerk can serve as an alternate to the inmate grievance representative if the inmate grievance representative and alternates are absent.

  c.    Uniformed Staff Representative

      i.    An uniformed staff representative is a correction officer and a voting member of the IGRC.  A uniformed staff representative is responsible for the following:

416R



| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT<br>**INMATE GRIEVANCE AND REQUEST PROGRAM** | |
| :---: | :---: | :---: | :---: |
| | CLASSIFICATION #<br>**3376** | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>**X** YES ☐ NO | PAGE **10** OF<br>**33** PAGES |



## IV.   PROCEDURE (cont.)

- Supervising and escorting all inmates involved in Inmate Grievance Resolution Committee activities.

- Conducting accurate and timely fact-finding investigations of inmate grievances.

- Assisting in the mediation and resolution of inmate grievances and requests at the informal and formal levels of review.

- Presenting pertinent and accurate documentation on all inmate grievances and requests submitted to the IGRP.

- Inspecting grievance and request boxes located in common areas and housing areas every business day, as well as retrieving all submitted grievances every business day.

- Retrieving directly all grievances and requests from and providing receipts and IGRP disposition forms to inmates confined to punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas where the inmates cannot directly access a grievance and request box or the IGRP office, a minimum of three times per week.

- Preparing and processing payrolls for all inmates assigned to the Inmate Grievance Resolution Committee.

- Assisting the grievance supervisor in conducting and supervising the inmate grievance representative nomination and election processes, training and conducting orientation for inmates assigned to the Inmate Grievance Resolution Committee, and monitoring the implementation of grievance dispositions.

- Supervising the Inmate Grievance Resolution Committee in the absence of the grievance supervisor.

ii.   Uniformed staff representatives shall not be assigned duties that could potentially conflict with their ability to independently evaluate grievances, nor shall they serve in roles in which they are likely to be the subject of an inmate grievance. In the event that the uniformed staff representative is involved in any manner with an

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
|---|---|---|---|---|
| | CLASSIFICATION # **3376** | | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **11** OF **33** PAGES | |

## IV.    PROCEDURE (cont.)

inmate grievance, the uniformed staff representative must recuse himself/herself from handling any IGRP or Inmate Grievance Resolution Committee duties concerning that matter.

4.    Code of Ethics and Duties

All Inmate Grievance Resolution Committee members (consisting of the grievance supervisor, uniformed staff representative and inmate grievance representative) and inmate grievance clerks shall receive a copy of the IGRP Code of Ethics and Duties (Form 7113R, Attachment E) and shall acknowledge receipt of the IGRP Code of Ethics and Duties in writing.  The inmate grievance representative alternate shall also receive a copy of this code if he/she is necessary to fill the inmate grievance representative vacancy on the Inmate Grievance Resolution Committee. The grievance supervisor shall maintain the signed form and a copy shall be provided to the signatory.

a.    The Code of Ethics and Duties consists of the following principles:

i.    Members shall not obstruct an inmate from exercising his/her right to file a grievance.

ii.    Members shall demonstrate a willing and tactful attitude in the performance of their duties.

iii.    Members shall not expect or receive preferential treatment because of their participation in the IGRP.

iv.    Members shall not abuse their duties, responsibilities or assignments.

v.    Members shall be responsible for the safekeeping of grievance files and preventing their unauthorized use.

vi.    Members shall not intentionally undermine the IGRP's operations or credibility.

vii.    Members of the IGRP shall have a working knowledge of the program and of their responsibilities as members.

viii.    Members shall not violate Department rules and regulations.

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3376** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **12** OF **33** PAGES |

## IV.   PROCEDURE (cont.)

    b.   Code of Ethics and Duties Violations

The grievance supervisor shall monitor the compliance of inmate grievance representatives, uniformed staff representatives, and inmate grievance clerks with the IGRP Code of Ethics and Duties. Inmate grievance representatives (or acting alternates) who violate the IGRP Code of Ethics and Duties may be removed from the Inmate Grievance Resolution Committee in accordance with due process requirements as set forth in Directive 3377, Due Process for IGRC Inmate Representatives, or its successor.

### D.   IGRP SUBMISSION PROCEDURE

1.   Within ten business days from the date the alleged condition or issue relating to his/her confinement took place, an inmate must complete an IGRP Statement form (Form 7101R, Attachment B) with his/her name, book and case number, NYSID number (optional), facility, housing area, date of incident (or indicate "ongoing" if that is the case), date submitted by the inmate, a description of the grievance or request, a specific action requested, and information regarding whether the inmate filed a grievance or request with a court or other agency. The inmate shall also confirm whether he/she wants his statement edited for clarification by IGRP staff or requires that the IGRP staff write the grievance or request on his/her behalf.

    a.   If the inmate alleges that the condition or issue relating to his/her confinement is ongoing, the inmate shall not have to submit the IGRP Statement Form within the ten-day time limit.

2.   The deputy warden for programs shall ensure that blank IGRP Statement Forms are available in every inmate housing area and in law libraries, program offices, and the IGRP offices.

3.   Inmates are required to use the IGRP Statement Form to submit his/her request or grievance. Upon completion of the IGRP Statement Form, the inmate shall: (1) deposit the form into a "grievance and request box," located in the inmate's housing area or other common area, (2) personally deliver it to the IGRP Office, or (3) for inmates who cannot directly access a grievance and request box or the IGRP office, give it to IGRP staff during IGRP staff visits to housing areas (punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas without a grievance and request box).

416R



| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION #<br>**3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES  [ ] NO | PAGE **13** OF<br>**33** PAGES | |

## IV.   PROCEDURE (cont.)

4.   If the inmate does not use the IGRP Statement Form to submit his/her grievance or request, IGRP staff shall provide the inmate with a blank copy of the IGRP Statement Form within five business days after receipt of a submission and direct the inmate to re-submit the grievance or request on that form.  IGRP staff shall assist the inmate in filling out the form if necessary. The grievance or request shall be deemed submitted as of the date of the initial submission, regardless of the format used.   When the inmate submits a grievance or request using the IGRP Statement Form, the grievance or request will be considered timely, so long as the initial submission was timely.  It is a prerequisite that the inmate submits his/her grievance or request on the IGRP Statement Form for it to be processed through the IGRP.

5.   Any inmate confined to punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas where the inmate cannot directly access a grievance and request box or the IGRP office must request the IGRP Statement Form from the IGRP Staff or housing area officer.   Inmates in punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas where the inmates cannot directly access a grievance and request box or the IGRP office shall submit their completed IGRP Statement Forms directly to the IGRP staff.

   a.   The IGRP staff shall visit punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas where the inmate cannot directly access a grievance and request box or the IGRP office a minimum of three times per week. They shall collect submissions from inmates and completed IGRP Statement Forms from inmates, and shall provide receipts and IGRP Disposition Forms to inmates.

6.   If an inmate seeks to file a grievance or request which requires immediate attention, the inmate shall contact the captain or tour commander and submit his/her completed IGRP Statement Forms to the captain or tour commander, after which the captain or tour commander shall forward it to the attention of the grievance supervisor no later than the next business day.

7.   The grievance supervisor or the facility's uniformed staff representative shall be exclusively responsible for locking and emptying grievance and request boxes.

8.   Provision of Receipts

416R

| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT<br><br>**INMATE GRIEVANCE AND REQUEST PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION #<br>**3376** | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br><br>[X] YES   [ ] NO | PAGE **14** OF<br>**33** PAGES |

## IV.   PROCEDURE (cont.)

If an inmate files a completed IGRP Statement Form in-person at the IGRP office, the inmate will promptly receive a receipt in-person at the time of filing. IGRP staff will date and time stamp the form, add a grievance reference number, indicate the category of the grievance or request, and sign it.  IGRP staff shall then make a photocopy of the form and provide it to the inmate as a receipt of filing a grievance or request.   IGRP staff shall also enter all information from the IGRP Statement Form into the IGRP database.

    a.    If an inmate files a completed IGRP Statement Form by depositing it in a grievance and request box or is confined to punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas where the inmate cannot directly access a grievance and request box or the IGRP office, IGRP staff shall provide the inmate with a receipt within two business days of collecting it.

    b.    If the inmate does not receive a receipt from the IGRP within two business days after submitting the completed IGRP Statement Form, the inmate should re-submit an IGRP Statement Form to the IGRP.

   9.   Timeframe Extension

    a.    When the inmate demonstrates a valid reason for delay in submitting a grievance or request, IGRP staff may grant an extension to the inmate to permit the inmate to file a grievance/request on an IGRP Statement Form more than ten business days from the date the alleged condition or issue relating to his/her confinement took place or began.  Valid reasons for a delay may relate to an inmate's medical condition, transfer to another facility, transfer to punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas where the inmate cannot directly access a grievance and request box or the IGRP office, and court appearances.  The IGRP staff shall complete the Time Limit Extension Form (Form 7114R, Attachment F) to document the extension.

    b.    The IGRP, the commanding officer, or the Central Office Review Committee, may request timeframe extensions by which they must complete IGRP tasks, but such extensions may only be granted with the written consent of the inmate. Within the time limitations, IGRP staff shall contact the inmate to obtain his/her consent by having the inmate sign the Time Limit Extension Form (Form 7114R, Attachment F).

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **15** OF **33** PAGES | |

## IV.   PROCEDURE (cont.)

10.   Appeal in absence of timely decision from IGRP

a.   The Department's failure to obtain inmate consent for a time frame extension shall not affect the validity of a departmental disposition. In the event that the inmate does not receive a timely disposition at any stage of the IGRP process, the inmate may submit a request for an appeal (to proceed to the next step of the IGRP process) through the use of the IGRP Disposition Form as appropriate, and consult with IGRP staff for assistance.   The inmate may also submit a request for an appeal through the use of the IGRP Statement Form, noting that he has not received a timely disposition and wishes to appeal to the next stage of the process. Such an appeal shall be submitted no later than ten (10) business days following the date upon which a response was due from the Department.

E.   REASONABLE ACCOMMODATIONS

The grievance supervisor shall ensure that disabled inmates are provided necessary assistance and make reasonable accommodations to facilitate their access to and utilization of the IGRP.   Reasonable accommodations shall include, but are not limited to, meetings with inmates at accessible sites and the provision of qualified sign language interpreters for deaf and mute inmates who use only sign language to communicate.  IGRP staff shall consult with the Inmate Disability Rights Coordinator (see Directive 3802, Reasonable Accommodation for Inmates with Disabilities, or its successor) involving any issues regarding the provision of reasonable accommodations to facilitate inmates' access to and utilization of the IGRP.

F.   INTERPRETERS/ADVISORS

IGRP staff shall arrange for and provide interpreters/advisors for those inmates who want to access the IGRP but who do not sufficiently speak or write English. Inmates or staff may function as interpreters/advisors.   In the event an appropriate interpreter/advisor cannot be located, then IGRP staff shall utilize the services of the Department's Language Service Team. Any interpreters/advisors shall be instructed by IGRP staff to maintain the confidentiality of the submissions to the IGRP.  IGRP staff will also data enter all the occurrences when the inmate utilizes an interpreter/advisor who is an inmate, staff, or member of the Department's Language Service Team into the IGRP database

416R

| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT<br>**INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
|---|---|---|---|---|
|  | CLASSIFICATION #<br>**3376** | | |  |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES   [ ] NO | PAGE **16** OF<br>**33** PAGES | |

## IV.   PROCEDURE (cont.)

G.   DISMISSAL, REFERRAL, INVESTIGATION, AND PROPOSAL OF RESOLUTIONS BY IGRP STAFF

1.   Review

The grievance supervisor, with assistance from the uniformed staff representative, shall review all completed IGRP Statement Forms.  From the date the IGRP staff received the form directly from the inmate or the date that the IGRP staff collected the form from the grievance and request box, the grievance supervisor shall have up to five business days to review the IGRP Statement Form, assess the submission and determine whether it falls within the IGRP's jurisdiction, dismiss and close the grievance or request, refer the submission to the appropriate entity as described in Section IV.B.2, above, or investigate the grievance or request and propose a resolution to the inmate.

2.   Dismissal

The grievance supervisor may dismiss and close a grievance or request if the grievance supervisor determines that: (1) the inmate has not been or will not be personally and directly affected by the condition or issue in the inmate's grievance or request in accordance with Section IV.B.1; (2) the inmate is seeking action with respect to matters outside of the Department's jurisdiction in accordance with Section IV.B.2.d; and/or 3) the grievance or request rests on facility-based issues and no longer personally and directly affects an inmate who has been transferred from the facility where the inmate originally filed the grievance or request.

In the event that the grievance or request is dismissed due to a transfer of the inmate to another facility, IGRP staff shall refer any complaint of staff misconduct to the commanding officer in accordance with Section IV.B.2, and attempt to resolve any institutional practice raised by the grievance or request that is contrary to departmental policy.  Additionally, if the grievance supervisor resolves the grievance, he/she will communicate the resolution to the grievance supervisor at the receiving facility.  The grievance supervisor will refer an underlying complaint against staff, if any, to the commanding officer as specified in Section IV.B.2, above.

When the grievance supervisor dismisses and closes a grievance or request, the grievance supervisor shall clearly cite the reason(s) for such dismissal in the IGRP Disposition Form (Form 7102R, Attachment C), and shall, where appropriate, refer the submission to the appropriate entity for redress of the matter.

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3376** | |  |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **17** OF **33** PAGES |

## IV.   PROCEDURE (cont.)

3.   Referral

a.   If the IGRP staff determines that the condition or issue in the inmate's IGRP Statement Form (Form 7101R, Attachment B) is not subject to the IGRP process (see Section IV.B.2.a-d), the grievance supervisor shall provide this disposition to the inmate on the IGRP Disposition Form (Form 7102R, Attachment C), along with information regarding the entity to which the matter was referred, and what process is available to address the condition or issue.

i.   The grievance supervisor shall forward any inmate's submission not subject to the IGRP process to the entity authorized to handle the submission (see Appendix A) and request confirmation of receipt within ten business days.  If the grievance supervisor does not receive a confirmation of receipt within ten business days, the grievance supervisor shall follow up to obtain confirmation of receipt.

4.   Investigation

a.   The IGRP staff shall document its investigation using the "IGRP Investigation Form" (Form 7115R, Attachment G).

b.   When an inmate submits an IGRP Statement Form (Form 7101R, Attachment B) that is in any way illegible and/or incomplete, IGRP staff shall interview the inmate during the investigation to clarify the statement.

5.   Informal Resolution

The IGRP staff shall enter the proposed resolution of the grievance or request on the IGRP Disposition Form (Form 7102R, Attachment C). The grievance supervisor shall meet with the inmate to review the proposed resolution.

a.   Acceptance

If the inmate is satisfied with the resolution that the IGRP staff proposes, the inmate shall indicate that he/she has accepted the resolution and sign and date the IGRP Disposition Form (Form 7102R, Attachment C).  The grievance supervisor shall sign and date the form.

416R

| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT<br><br>**INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
|---|---|---|---|---|
| | CLASSIFICATION #<br>**3376** | | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES  [ ] NO | PAGE **18** OF<br>**33** PAGES | |

## IV.  PROCEDURE (cont.)

The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate within two business days of receipt from the inmate.  The grievance supervisor shall enter the date of and relevant information regarding the inmate's acceptance of the resolution into the IGRP database.

b.  Appeal

If the inmate does not accept the resolution that the IGRP staff proposes, the inmate shall indicate on the IGRP Disposition Form, within five business days from notification of the proposed resolution, that the inmate does not accept the resolution and requests a formal hearing.  The inmate shall sign and date the IGRP Disposition Form. The grievance supervisor shall sign and date the form.  The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate.  The grievance supervisor shall enter the date of and relevant information regarding the inmate's appeal into the IGRP database.

i.  If the inmate requests a hearing, the IGRP staff shall complete an IGRC Hearing Notice (Form 7103R, Attachment H), schedule the Inmate Grievance Resolution Committee hearing, and ensure that the IGRC Hearing Notice form is served upon the inmate within one business day.  IGRP staff shall enter dates and relevant information regarding the inmate's request for a formal hearing into the IGRP database.

ii.  If the inmate misses the deadline to request a formal hearing due to a legitimate and substantiated reason, then the inmate may still request directly from IGRP staff an Inmate Grievance Resolution Committee hearing at the earliest possible opportunity and in no event later than three days following removal of the impediment which prevented a timely filing. In general, a legitimate and substantiated reason for delay means a situation in which the inmate was prevented by circumstances beyond the inmate's control from submitting the request for a hearing within the established time frame.

416R



| EFFECTIVE DATE **09/10/12** | SUBJECT | | |
|---|---|---|---|
| CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
| DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **19** OF **33** PAGES | |



## IV.   PROCEDURE (cont.)

    c.   No Response

        If the inmate does not provide a decision in writing on whether to accept or not accept the resolution that the IGRP staff proposes within five business days from notification of the proposed resolution, the IGRP staff shall indicate on the IGRP Disposition Form that the inmate did not respond to the proposed resolution and shall contact the inmate to retrieve the inmate's decision.   If the inmate decides to accept the resolution, the inmate shall indicate that he/she has accepted the disposition and shall sign and date the IGRP Disposition Form. The grievance supervisor shall sign and date the form.   The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate.   The grievance supervisor shall enter the date and relevant information regarding the inmate's acceptance of the resolution into the IGRP database.

        i.   If the inmate continues to be non-responsive to the resolution after the IGRP staff has contacted the inmate, the inmate shall forfeit his/her participation in the IGRP process. The grievance supervisor shall indicate on the IGRP Disposition form that the inmate was non-responsive and shall sign and date the form. The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate.   The grievance supervisor shall enter the date of and relevant information into the IGRP database.

        ii.   If the inmate has been discharged from Department custody, the inmate will no longer have access to the IGRP process.

H.   INMATE GRIEVANCE RESOLUTION COMMITTEE HEARING

    1.   Within five business days of the inmate's request for an Inmate Grievance Resolution Committee hearing, the Inmate Grievance Resolution Committee shall conduct a formal hearing of the grievance or request, render a disposition, and provide the disposition to the inmate.

| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION # **3376** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES  [ ] NO | PAGE **20** OF **33** PAGES |

## IV.   PROCEDURE (cont.)

2.   The grievance supervisor is the chairperson of the Inmate Grievance Resolution Committee and shall make certain that the inmate and available relevant witnesses, if any, are afforded a reasonable opportunity to appear at the hearing and testify, subject to reasonable security considerations. Hearings for inmates housed in punitive or administrative segregation, hospital wards, mental observation units, or other special population housing areas where the inmate cannot directly access a grievance and request box or the IGRP office shall be conducted in the area day rooms in coordination with housing area officers and the deputy warden of programs.

   a.   If the inmate misses the hearing due to a legitimate and substantiated reason (e.g., court appearance, visit, medical treatment, or parole hearing), then the Inmate Grievance Resolution Committee may adjourn the hearing. However, if the inmate misses three scheduled hearings due to one or more legitimate and substantiated reasons, the IGRC shall act on the grievance or request at the third scheduled hearing. In general, a legitimate and substantiated reason for delay means a situation in which the inmate was prevented by circumstances beyond the inmate's control from attending the hearing at the scheduled time.

   b.   If the inmate does not appear at the third scheduled hearing and fails to provide a legitimate and substantiated reason, then the Inmate Grievance Resolution Committee shall hold the hearing in absentia and has the authority to reach a decision or dismiss the grievance or request by majority vote.

   c.   Inmates who refuse to attend the IGRC hearing must do so in-person to IGRP staff, which shall document the inmate's refusal on the IGRP Hearing Notice form, specifically in section where it can be indicated that the inmate was not present. In the subsection "other," IGRP staff shall indicate that the inmate refused to attend the hearing and the inmate shall sign and date the form. IGRP staff shall provide the inmate with a copy of the completed form. IGRP staff is not authorized to accept housing area officers' representation that an inmate has refused to attend the hearing.

3.   The Inmate Grievance Resolution Committee shall conduct the hearing at the time and place set. The inmate and available relevant witnesses may present relevant information, comments, or other evidence in furtherance of their respective positions. The Inmate Grievance Resolution Committee shall determine the relevance and materiality of the evidence offered. After the

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT |
|---|---|---|
| | CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** |

| DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING   **X** YES   ☐ NO | PAGE **21** OF **33** PAGES |



## IV.   PROCEDURE (cont.)

grievance supervisor closes the hearing, the Inmate Grievance Resolution Committee shall deliberate in a private session.

4.      The IGRC shall provide the inmate its decision in writing on the IGRP Disposition Form, which all the voting Inmate Grievance Resolution Committee members shall sign.  The grievance supervisor shall date and time-stamp this form and the IGRP staff shall enter relevant dates and information regarding the Inmate Grievance Resolution Committee's disposition into the IGRP database.

a.   Acceptance

If the inmate is satisfied with the Inmate Grievance Resolution Committee's disposition, the inmate shall indicate that he/she has accepted the disposition and sign and date the IGRP Disposition Form, within five business days from notification of the IGRC disposition. The grievance supervisor shall sign and date the form. The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate within two business days of receipt from the inmate. The grievance supervisor shall enter the date of and relevant information regarding the inmate's acceptance of the disposition into the IGRP database.

b.   Appeal

If the inmate does not accept the Inmate Grievance Resolution Committee's disposition, the inmate shall indicate on the IGRP Disposition Form, within five business days from notification of the Inmate Grievance Resolution Committee's disposition, that the inmate does not accept the disposition and appeals to the commanding officer. The inmate shall sign and date the IGRP Disposition Form. The grievance supervisor shall sign and date the form.  The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate. The grievance supervisor shall enter the date of and relevant information regarding the inmate's rejection of the Inmate Grievance Resolution Committee's disposition into the IGRP database.

i.   If the inmate misses the deadline to appeal to the commanding officer due to a legitimate and substantiated reason (e.g., court appearance, medical treatment, or parole hearing), then the inmate may still request directly from IGRP staff an Inmate

416R

| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT<br>**INMATE GRIEVANCE AND REQUEST PROGRAM** | |
|---|---|---|---|
| | CLASSIFICATION #<br>**3376** | | |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES  [ ] NO | PAGE **22** OF<br>**33** PAGES |

## IV.   PROCEDURE (cont.)

Grievance Resolution Committee hearing at the earliest possible opportunity and in no event later than three days following removal of the impediment which prevented a timely filing. In general, a legitimate and substantiated reason for delay means a situation in which the inmate was prevented by circumstances beyond the inmate's control from submitting the request for a hearing within the established time frame.

c.   No Response

If the inmate does not provide a decision in writing on whether to accept or not accept the Inmate Grievance Resolution Committee's disposition within five business days from notification of the proposed resolution, the IGRP staff shall indicate on the IGRP Disposition Form that the inmate did not respond and shall contact the inmate to retrieve the inmate's decision.  If the inmate decides to accept the resolution, the inmate shall indicate that he/she has accepted the disposition and sign and date the IGRP Disposition Form. The grievance supervisor shall sign and date the form.  The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate.  The grievance supervisor shall enter the date of and relevant information regarding the inmate's acceptance of the resolution into the IGRP database.

i.   If the inmate continues to be non-responsive to the resolution after the IGRP staff has contacted the inmate, the inmate shall forfeit the inmate's participation in the IGRP process. The grievance supervisor shall indicate on the IGRP Disposition form that the inmate was non-responsive and shall sign and date the form. The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate.  The grievance supervisor shall enter the date of and relevant information into the IGRP database.

ii.   If the inmate has been discharged, the inmate will no longer have access to the IGRP process.

I.   APPEAL TO THE COMMANDING OFFICER

416R



| EFFECTIVE DATE **09/10/12** | SUBJECT | |
|---|---|---|
| CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
| DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **23** OF **33** PAGES |

## IV.   PROCEDURE (cont.)

1. Within one business day of the inmate's request for an appeal to the commanding officer, the IGRP staff shall forward the relevant IGRP Statement Form, the IGRP Disposition Form, the IGRP Investigation Form and all other relevant documentation to the office of the commanding officer.

   a. The commanding officer's office shall time and date-stamp all documents related to the appeal on the day they are received.

   b. The commanding officer shall review all the paperwork and conduct further investigation if necessary.   The commanding officer shall determine the relevance and materiality of the evidence offered.

2. Within five business days of receiving the inmate's appeal, the commanding officer must indicate his/her disposition on the IGRP Commanding Officer's Disposition Form (Form 7104R, Attachment I), sign and date the form, and provide the IGRP Commanding Officer's Disposition Form to the IGRP staff. The grievance supervisor or uniformed staff representative shall date and time-stamp the IGRP Commanding Officer's Disposition Form and provide it to the inmate on the same day it is received from the commanding officer.   The grievance supervisor shall enter the date of and relevant information regarding the commanding officer's disposition into the IGRP database.

   a. Acceptance

      If the inmate is satisfied with the commanding officer's disposition, the inmate shall indicate that he/she has accepted the resolution and sign and date the IGRP Commanding Officer's Disposition Form.   The grievance supervisor shall sign and date the form. The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Commanding Officer's Disposition Form to the inmate within two business days of receipt from the inmate.   The grievance supervisor shall enter the date of and relevant information regarding the inmate's acceptance of the commanding officer's disposition into the IGRP database.

   b. Appeal

      If the inmate does not accept the commanding officer's disposition, the inmate shall indicate on the IGRP Commanding Officer's Disposition Form, within five business days from notification of the commanding officer's disposition, that the inmate does not accept the disposition and requests to appeal to the Central Office Review Committee.   The inmate

416R



| EFFECTIVE DATE **09/10/12** | SUBJECT |
| CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** |
| DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO |

PAGE **24** OF **33** PAGES



## IV.    PROCEDURE (cont.)

shall sign and date the IGRP Commanding Officer's Disposition Form. The grievance supervisor shall sign and date the form. The grievance supervisor or uniformed staff representative shall provide a photocopy of the IGRP Commanding Officer's Disposition Form to the inmate. The grievance supervisor shall enter the date of and relevant information regarding the inmate's appeal of the commanding officer's disposition into the IGRP database.

i.    If the inmate misses the deadline to appeal to the Central Office Review Committee due to a legitimate and substantiated reason (e.g., court appearance, medical treatment, or parole hearing), then the inmate may still request directly from IGRP staff to appeal to the Central Office Review Committee at the earliest possible opportunity and in no event later than three days following removal of the impediment which prevented a timely filing. In general, a legitimate and substantiated reason for delay means a situation in which the inmate was prevented by circumstances beyond the inmate's control from submitting the appeal within the established time frame.

c.    No Response

If the inmate does not provide a decision in writing on whether to accept or not accept the commanding officer's disposition within five business days from notification, the IGRP staff shall indicate on the IGRP Disposition Form that the inmate did not respond and shall contact the inmate to retrieve the inmate's decision. If the inmate decides to accept the resolution, the inmate shall indicate that he/she has accepted the disposition and sign and date the IGRP Disposition Form. The grievance supervisor shall sign and date the form. The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate. The grievance supervisor shall enter the date of and relevant information regarding the inmate's acceptance of the resolution into the IGRP database.

i.    If the inmate continues to be non-responsive to the resolution after the IGRP staff has contacted the inmate, the inmate shall forfeit the inmate's participation in the IGRP process. The grievance supervisor shall indicate on the IGRP Disposition form that the inmate was non-responsive and shall sign and date the form. The grievance supervisor or uniformed staff representative shall provide a photocopy of the signed IGRP Disposition Form to the inmate.

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | |  |
|---|---|---|---|---|
| | CLASSIFICATION # **3376** | | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **25** OF **33** PAGES | |

## IV.   PROCEDURE (cont.)

The grievance supervisor shall enter the date of and relevant information into the IGRP database.

ii.   If the inmate has been discharged from Department custody, the inmate will no longer have access to the IGRP process.

J.   APPEAL TO THE CENTRAL OFFICE REVIEW COMMITTEE (CORC) WITH REVIEW AND ADVICE OF THE BOARD OF CORRECTION

1.   The CORC shall consist of five voting members consisting of the first deputy commissioner, general counsel, and the associate commissioner for programs and discharge planning or their designees, and two designees of the chief of department. The associate commissioner for programs and discharge planning shall be the chairperson. The IGRP executive director shall act as a facilitator, but is not a voting committee member.

The CORC provides dispositions on grievances or requests after the inmate appeals the commanding officer's decision. The CORC functions on behalf of the Commissioner and pursuant to the Commissioner's authority. The CORC's disposition constitutes the Department's final decision on the inmate's grievance or request. The IGRP executive director is responsible for ensuring that CORC decisions are implemented.

2.   Within one business day of receipt of the inmate's request for an appeal to the CORC, the IGRP staff shall forward the relevant IGRP Statement Form, IGRP Disposition Form, IGRP Investigation Form, IGRP Commanding Officer's Disposition Form, and other relevant documentation to the IGRP's executive director.

a.   The executive director shall time and date-stamp all documents related to the appeal on the day the executive director receives them. The executive director shall review all the documents and conduct further investigation if necessary. The executive director shall compile the appeals documents for distribution to the CORC.

3.   Within two business days of receipt of the inmate's appeal by the executive director, the executive director shall forward, via the Transmittal to Central Office Review Committee Form (Form 7105R, Attachment J), the appeals documents to each member of the CORC, and shall simultaneously forward copies of these documents to the executive director of the New York City Board of Correction.

416R



| EFFECTIVE DATE 09/10/12 | SUBJECT | |
|---|---|---|
| CLASSIFICATION # 3376 | **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
| DISTRIBUTION A & B | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **26** OF **33** PAGES |



## IV.   PROCEDURE (cont.)

4.   The Board of Correction shall be afforded five business days in which to offer any opinion or advice it may wish with regard to the proper resolution of the appeal of the grievance or request.  If the Board of Correction responds, the IGRP executive director shall ensure that copies of that response are provided to each voting member of the CORC to be fully considered before making a final decision.   If no response is received within five business days, the Board of Correction shall be deemed to have elected not to comment or advise the Department with regard to the grievance or request, and the CORC shall proceed to make a decision.  If the Board of Correction requests additional time to comment on a grievance, that time shall be granted, to a limit of five additional business days absent extraordinary circumstances.

5.   The CORC may render its decision through an informal process or formal meeting.

   a.   CORC Informal Process/Review and Decision:

   If, in the opinion of the IGRP executive director, the inmate's appeal may not require a formal CORC meeting to resolve the grievance or request, then the executive director may first process the CORC appeal informally.

   i.   The IGRP executive director shall forward the appeal documents and voting sheet to each CORC member for review and decision.

   Within ten business days of receipt of the appeal by the member, each member must fill out a voting sheet indicating the member's decision and forward the completed sheet to the IGRP executive director.

   ii.   If all CORC members vote unanimously for a decision, then the IGRP executive director shall forward the CORC decision, memorialized in the Central Office Review Committee's Disposition Form (Form 7106R, Attachment K), to the inmate, the facility's commanding officer, the IGRP facility office, the Board of Correction, and any other appropriate party within one business day.

   b.   CORC Formal Meeting/Review and Decision

   In the event that the informal review and decision process does not result in a unanimous decision, or if, in the opinion of the IGRP executive director, the inmate's appeal requires a formal in-person CORC meeting

416R



| EFFECTIVE DATE<br>**09/10/12** | SUBJECT |
| --- | --- |
| CLASSIFICATION #<br>**3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** |
| DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>**[X] YES   [ ] NO** | PAGE **27** OF **33** PAGES |



## IV.    PROCEDURE (cont.)

to resolve the grievance or request, the executive director shall convene the CORC to meet in-person to review the appeal and shall render a decision within 15 business days of receipt of the appeal.

i.     CORC decisions stemming from a formal meeting require a majority vote of the committee members. The CORC shall submit a majority decision to the CORC chairperson on the Central Office Review Committee's Disposition Form. Within one business day, the IGRP executive director shall forward the CORC decision to the inmate, the facility's commanding officer, the IGRP facility office, the Board of Correction, and any other appropriate party.

c.     The CORC's disposition constitutes the Department's final decision on the inmate's grievance or request.

d.     The Grievance Supervisor shall ensure that any final CORC decision granting a grievance shall be communicated to the commanding officer of the facility, who shall confirm to the Grievance Supervisor within ten business days that the resolution of the grievance or request has been implemented.    Any failures should be reported to the executive director of the IGRP for appropriate action including, if necessary, referring the matter back to the CORC for further action.        If appropriate, the grievance supervisor shall also forward the decision to the commanding officer of any facility to which the inmate has been transferred.

## V.   REQUESTS AND GRIEVANCES RELATED TO MEDICAL ISSUES

A.    MEDICAL PERSONNEL: When an inmate believes that a medical professional employed to provide services to inmates has failed to provide adequate medical care, the grievance or request is not subject to the IGRP process. The IGRP staff shall forward the inmate's grievance or request to the medical provider, the Department of Health and Mental Hygiene, and the associate commissioner for health affairs and nutritional services for investigation and resolution.

B.    DEPARTMENT PERSONNEL: When an inmate believes that Department personnel have interfered with the inmate's timely access to medical care, the inmate's grievance or request falls within the IGRP's jurisdiction and the inmate shall submit a grievance or request with the IGRP.

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT **INMATE GRIEVANCE AND REQUEST PROGRAM** | |  |
|---|---|---|---|---|
| | CLASSIFICATION # **3376** | | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE **28** OF **33** PAGES | |

## VI. REQUESTS AND GRIEVANCES RELATED TO THE EXERCISE OF RELIGIOUS BELIEFS

A. REQUESTS AND GRIEVANCES CONCERNING RELIGIOUS ACCOMMODATIONS

1. Inmates may request to exercise religious beliefs and practices not currently available in the facility through the IGRP. Inmates shall submit such requests using the IGRP Statement Form in accordance with the procedures set forth in Section IV.D.

2. The facility's grievance supervisor shall forward all inmate requests of a religious nature to the administrative chaplain, in accordance with Directive 3261, Access to Religious Programs and Practices. See Directive 3261, Access to Religious Programs and Practices, for a detailed description of the process for resolving grievances and requests concerning requests religious accommodation.

3. Unlike dispositions of non-religious grievances and requests, which may be appealed to and ultimately reviewed by the Central Office Review Committee, if requests concerning religious accommodations cannot be resolved informally, the Committee on Religious Accommodations shall review them. This committee shall be comprised of the associate commissioner for programs and discharge planning, the chief of department, and the general counsel, or their respective designees. The associate commissioner for programs and discharge planning shall be responsible for convening the committee and shall act as chairperson.

4. The grievance supervisor shall receive grievances and requests on religious issues, shall provide receipts and dispositions to inmates, and shall maintain records of such grievances and dispositions as set forth in Directive 3261.

B. MONITORING REQUESTS AND GRIEVANCES

The IGRP executive director shall compile and provide department-wide daily reports of requests and grievances concerning religious services and accommodations to the assistant commissioner of skills development and program services, who will analyze and report on noticeable trends and potential areas of non-compliance with policy and mandates. The assistant commissioner shall forward such reports concerning religious services and accommodations grievances and requests to the director of ministerial services, the associate commissioner for programs and discharge planning, and to all members of the Committee on Religious Accommodations.

416R



| EFFECTIVE DATE<br>**09/10/12** | SUBJECT<br>**INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
| CLASSIFICATION #<br>**3376** | | | |
| DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES   [ ] NO | PAGE **29** OF<br>**33** PAGES | |



## VII. REQUESTS AND GRIEVANCES RELATED TO CLASSIFICATION, SECURITY RISK GROUP (SRG) OR WATCH GROUP ISSUES

A.   An inmate may only dispute their classification score and/or custody level based on factual information that is used to score and complete the initial or reclassification assessment.  An inmate who wants to dispute his/her score and/or custody must sign and check the box(es) on Forms 4100A and/or 4100B, the initial classification and reclassification forms, indicating that that the inmate wants to dispute the classification score and/or custody level and identify the indicators and/or overrides he/she is questioning. The inmate must forward the form to the facility IGRP office, which shall consider and process the form as a grievance.  The IGRP office shall write "classification grievance" on the IGRP Statement Form and staple the Forms 4100A and/or 4100B to the IGRP Statement Form.  The IGRP stall shall make photocopies of all forms, sign, date and time-stamp them, and provide the copies to the inmate as a receipt.  The process will then follow the standard procedures outlined in Section IV.D-J, above.

B.   An inmate may file a grievance contesting identification as a validated Security Risk Group (SRG) member or Watch Group member. The inmate can file the grievance by utilizing the IGRP Statement Form and submit a written statement and other materials which the inmate wishes to offer to establish that the inmate is not a member of SRG or Watch Group. The grievance supervisor shall process the grievance and provide the inmate with a receipt.

    1.   Within two business days of receipt, the grievance supervisor shall forward these materials to the Intelligence Unit.  Within five business days of receipt of the materials, the Intelligence Unit shall re-evaluate all the information submitted and determine whether the inmate should remain identified as a validated SRG or Watch Group member.

    2.   The Intelligence Unit's Commanding Officer shall review the determination and respond to the facility grievance supervisor in writing whether the inmate's classification should continue to reflect validated membership in the SRG or Watch Group. The grievance supervisor shall communicate the decision utilizing the IGRP Disposition Form within one business day of receipt to the inmate.

    3.   Inmate appeals from the Intelligence Unit's determination shall be reviewed by the Central Office Review Committee.  (The Inmate Grievance Resolution Committee and the commanding officer are not authorized to review appeals concerning SRG or Watch Group status.)   The Central Office Review Committee shall review the appeal in accordance with the procedures set form in Section IV.J, above.

416R



| EFFECTIVE DATE 09/10/12 | SUBJECT INMATE GRIEVANCE AND REQUEST PROGRAM | |
|---|---|---|
| CLASSIFICATION # 3376 | | |
| DISTRIBUTION A & B | APPROVED FOR WEB POSTING  [X] YES  [ ] NO | PAGE 30 OF 33 PAGES |



## VIII. PROCEDURAL SAFEGUARDS

### A. STAFF REPRISALS

No reprisals by staff of any kind shall be taken against an inmate for good faith utilization of the grievance and request program.  An inmate may file a request or grievance alleging that the inmate was subject to reprisal as a result of filing a request or grievance.

### B. CONFLICTS OF INTEREST

If the inmate who filed the request or grievance objects to an inmate participating in its resolution as an inmate grievance representative or an inmate grievance clerk, the inmate grievance representative and/or inmate grievance clerk shall not participate in resolving the request or grievance.  If an inmate objects to both the inmate grievance representative and the inmate grievance clerk, then the grievance supervisor, uniformed staff representative and an alternate inmate grievance representative shall conduct the Inmate Grievance Resolution Committee hearing and reach a determination.  An inmate who is a member of the Grievance Resolution Committee shall not function as a voting representative at a hearing regarding his/her own request or grievance.

1. In the event that the uniformed staff representative or grievance supervisor is involved in any manner with an inmate grievance, the uniformed staff representative must recuse himself/herself from handling any IGRP or Grievance Resolution Committee duties concerning that matter.

2. When the uniformed staff representative cannot participate as a member of the Grievance Resolution Committee, the deputy warden for programs shall select an alternate uniformed staff member to act as the uniformed staff representative.  When the grievance supervisor cannot participate as a member of the IGRC, the IGRP executive director shall select an alternate staff member to act as the grievance supervisor.

3. Uniformed staff representatives shall not be assigned duties that could potentially conflict with their ability to independently evaluate requests and grievances, nor shall they serve in roles in which they are likely to be the subject of an inmate request or grievance.

416R



| | EFFECTIVE DATE **09/10/12** | SUBJECT | |
|---|---|---|---|
| | CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **31** OF **33** PAGES |

## VIII. PROCEDURAL SAFEGUARDS (cont.)

   C.   CONFIDENTIALITY

   IGRP staff shall lock all request and grievance files in cabinets located in a defined IGRP area.

   IGRP staff shall not routinely make documents and files available to Department employees or inmates who are not assigned to the IGRP, except upon showing of a legitimate operational need, which the facility's commanding officer must approve.

   D.   EMERGENCY REQUESTS AND GRIEVANCES

   The grievance supervisor shall refer any request or grievance of an emergency nature directly to the commanding officer to ensure an expeditious response.  An emergency shall include, but is not limited to, a situation in which an inmate's health, safety, or welfare is at risk. The commanding officer shall take whatever action is determined necessary to address the emergency, and shall so advise the IGRP staff and the inmate.   If the matter is not fully resolved, the request or grievance shall proceed in accordance with the procedures set forth in this directive.

   E.   IGRP ACCESS TO INFORMATION

   Grievance supervisors and uniformed staff representatives shall have access to all records and documents within the facility necessary for the resolution of requests or grievances, except where prohibited for confidentiality or security reasons.  Should a commanding officer determine that the release of specific information poses a threat to the safety or security of the facility or is confidential; such information may be withheld from grievance supervisors and uniformed staff representatives.  Within one business day of receiving a request for documentation from IGRP staff, the commanding officer shall submit a memorandum documenting the withholding of such information, and the reasons for withholding it to the IGRP's executive director.

## IX.   REFERENCES

   A.   Directive #3377, Due Process for IGRC Inmate Representatives, dated 01/23/89

   B.   Directive #3802, Reasonable Accommodation for Inmates with Disabilities, dated 12/15/05

   C.   Directive #4014R-A, Inmate Incentive Pay Plan, dated 04/11/07

   D.   Directive #5000R-A, Reporting Unusual Incidents, dated 11/19/04 (as amended)

416R



| | EFFECTIVE DATE<br>**09/10/12** | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION #<br>**3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | |  |
| | DISTRIBUTION<br>**A & B** | APPROVED FOR WEB POSTING<br>[X] YES [ ] NO | PAGE **32** OF<br>**33** PAGES | |

## IX.  REFERENCES (cont.)

E.   Directive #3261, Access to Religious Programs and Practices, dated 09/10/12.

F.   Operations Order #28/89, Identification of Hearing Impaired/Deaf Mute Inmates, dated 06/19/89 (as amended).

G.   Operations Order #14/91, Awarding Job Assignments within a Command, dated 04/02/91.

H.   Directive #4100R-C, Classification, dated 3/17/12.

I.   Operations Order #3/12, Monitoring and Managing Security Risk Groups and Watch Groups, dated 3/17/12.

## X.   ATTACHMENTS

A.   IGRP Categorization of Grievances and Requests (Appendix A)

B.   IGRP Statement Form (Form #7101R)

C.   IGRP Disposition Form (Form #7102R)

D.   Inmate Report of an Alleged Assault/Harassment (Form #7316R)

E.   IGRP Code of Ethics and Duties (Form #7113R)

F.   Time Limit Extension Form (Form #7114R)

G.   IGRP Investigation Form (Form #7115R)

H.   IGRC Hearing Notice (Form #7103R)

I.   Commanding Officer's Decision (Form #7104R)

J.   Transmittal to CORC (Form #7105R)

K.   Disposition of the Central Office Review Committee (Form #7106R)

416R

| | EFFECTIVE DATE **09/10/12** | SUBJECT | | |
|---|---|---|---|---|
| | CLASSIFICATION # **3376** | **INMATE GRIEVANCE AND REQUEST PROGRAM** | | |
| | DISTRIBUTION **A & B** | APPROVED FOR WEB POSTING [X] YES [ ] NO | PAGE **33** OF **33** PAGES | |

## XI.   SUPERSEDES

A.   Directive #3375R-A, entitled, Inmate Grievance Resolution Program, dated 03/13/08

B.   Any other Directive, Operations Order, Teletype, Memorandum, etc, that may be in conflict with the policies and procedures outlined herein.

## XII.   SPECIAL INSTRUCTIONS

A.   Within ten calendar days of the effective date of this order, all Commanding Officers shall implement a Command Level Order incorporating the policy and provisions outlined herein.

B.   All facility managers and supervisors shall ensure strict enforcement of the policy, guidelines and procedures noted herein.



**CITY OF NEW YORK - DEPARTMENT OF CORRECTION**
**INMATE GRIEVANCE AND REQUEST PROGRAM**
**CATEGORIZATION OF GRIEVANCES AND REQUESTS**

Eff.: 09/10/12
Ref.: Dir. #3376
Page 1 of 2



| Attachment A | **Appendix A** |
|---|---|

The following categories/issues are subject to the Inmate Grievance and Request Program (IGRP) process.

### Grievance Categories

| | |
|---|---|
| Classification | Mental Health (complaints involving Department personnel) |
| Clothing | Medical (complaints involving Department personnel) |
| Commissary | Noise |
| Correspondence/Mail | Personal Hygiene |
| Employment | Phone |
| Environmental | Programs |
| Food | Property |
| Housing | Recreation |
| Inmate Grievance and Request Program | Religion |
| Inmate Account | Rules and Regulations |
| Jail Time | School |
| Laundry | Search |
| Social Services | Security Risk Group/Watch Group |
| Law Library | Transportation |
| | Visit |

### Request Categories

Change of religion card

Religious accommodations

Request for information

Request for social services

Request for property release form

Request for transfer of funds form

Other



| CITY OF NEW YORK - DEPARTMENT OF CORRECTION | |
| --- | --- |
| INMATE GRIEVANCE AND REQUEST PROGRAM<br>CATEGORIZATION OF GRIEVANCES AND REQUESTS | Eff.: 09/10/12<br>Ref.: Dir. #3376<br>Page 2 of 2 |



| Attachment A | **Appendix A** |
| --- | --- |

The following categories/issues are <u>not subject</u> to the Inmate Grievance and Request Program (IGRP) process. IGRP staff shall forward the complaint or request to the appropriate entity for review and resolution. The entity is listed below next to each issue. IGRP staff shall also complete the IGRP Disposition Form and provide to the inmate.

| | |
| --- | --- |
| Staff-on-inmate non-sexual assault (use of force) allegation | Commanding officer |
| Staff-on-inmate sexual assault/abuse allegation (e.g. including repeated verbal statements or comments of a sexual nature, including demeaning references/derogatory comments about gender, body or clothing) | Tour commander or Department of Investigation |
| Staff-on-inmate non-sexual harassment (e.g., verbal harassment) | Commanding officer |
| Inmate-on-inmate non-sexual assault allegation | Commanding officer |
| Inmate-on-inmate sexual assault/abuse allegation | Tour commander or Department of Investigation |
| Inmate-on-inmate non-sexual harassment allegation (e.g., verbal harassment, intimidation, hoarding/confiscation of personal items, etc.) | Commanding officer |
| Status as an intended contraband recipient, enhanced restraint, Red ID, or centrally monitored case inmate | Deputy Warden of Security |
| Inmate disciplinary process and disposition | Deputy Warden of Security |
| Medical staff (e.g., complaints regarding quality of care, request for second medical opinion) | Medical provider, Department of Health and Mental Hygiene, DOC Associate Commissioner for Health Affairs and Nutritional Services |
| Mental health staff (e.g., complaints regarding quality of care, request for second medical opinion) | |
| Request for protective custody (fear for safety) | Deputy Warden of Security |
| Request for accommodation due to disability or claims of discrimination based on disability or perceived disability | DOC Disability Rights Coordinator |
| Freedom of Information Law requests | DOC General Counsel |

**Attachment B**

Form: #7101R, Eff.: 09/10/12, Ref.: Dir. #3376 - page 1



### City of New York - Department of Correction

# INMATE GRIEVANCE AND
# REQUEST PROGRAM STATEMENT FORM

| Inmate's Name: | Book & Case #: | NYSID # (optional): | |
|---|---|---|---|
| Facility: | Housing Area: | Date of Incident: | Date Submitted: |

All grievances and requests must be submitted within ten business days after the incident occurred, unless the condition or issue is on-going. The inmate filing the grievance or request must personally prepare this statement. Upon collection by Inmate Grievance and Request Program (IGRP) staff, IGRP staff will time-stamp and issue it a grievance/request reference number. IGRP staff shall provide the inmate with a copy of this form as a record of receipt within two business days of receiving it.

Request or Grievance:

_____

_____

_____

_____

_____

_____

_____

_____

_____

Action Requested by Inmate

_____

_____

_____

#### Please read below and check the correct box:

| | | Yes | | No |
|---|---|---|---|---|
| Do you agree to have your statement edited for clarification by IGRP staff? | ☐ | Yes | ☐ | No |
| Do you need the IGRP staff to write the grievance or request for you? | ☐ | Yes | ☐ | No |
| Have you filed this grievance or request with a court or other agency? | ☐ | Yes | ☐ | No |
| Did you require the assistance of an interpreter? | ☐ | Yes | ☐ | No |

Inmate's Signature: _____   Date of Signature: _____

---

#### For DOC Office Use Only
#### IGRP RETAINS THE DOUBLE-SIDED ORIGINAL FOR ADMINISTRATIVE RECORDS.
#### IGRP MUST PROVIDE A COPY OF THIS FORM TO THE INMATE AS A RECORD OF RECEIPT.

| Time Stamp Below: | Grievance and Request Reference #: | Category: |
|---|---|---|
| | Inmate Grievance and Request Program Staff's Signature: | |

**Attachment B**                    Form: #7101R, Eff.: 09/10/12, Ref.: Dir. #3376 - page 2



### City of New York - Department of Correction

# INMATE GRIEVANCE AND
# REQUEST PROGRAM STATEMENT FORM

The Inmate Grievance and Request Program (IGRP) at the NYC Department of Correction is available to resolve your individual complaints or concerns about specific matters involving incarceration.

A **grievance** is a written complaint submitted by an inmate in the Department's custody about an issue, action, condition, or practice relating to the inmate's confinement.

A **request** is a written individually expressed need for a service, assistance, or accommodation regarding any issue relating to the inmate's confinement.

- You may first seek to resolve the issue or condition by speaking to the involved staff or your housing officer.
- You always have the right to file a grievance or request.
- Before you seek relief from an external entity, like the courts or another agency, you should file your grievance or request with this program.

---

### THE SUBMISSION AND APPEALS PROCESSES

**1. SUBMISSION**

Submit this form (Statement form) to the IGRP office, IGRP staff, or drop it in a grievance and request box.

**2. INFORMAL RESOLUTION**

You will receive a proposed resolution within five days after the IGRP receives the form. If you disagree with the proposed resolution, you will have five business days to appeal and request a formal hearing.

If your submission involves a request to exercise religious beliefs or practices not currently available and you seek to appeal, the Committee on Religious Accommodations will review your request.

**3. FORMAL HEARING OF THE INMATE GRIEVANCE RESOLUTION COMMITTEE**

The Inmate Grievance Resolution Committee (IGRC) will conduct a hearing and render a written disposition within five business days from your request for a hearing.

If you disagree with the IGRC's disposition, you will have five business days to appeal to the commanding officer.

**4. COMMANDING OFFICER'S REVIEW**

The IGRP staff will forward your appeal to the commanding officer within one business day of receiving it. Within five business days of receiving the appeal, the commanding officer will render a written disposition.

**5. CENTRAL OFFICE REVIEW COMMITTEE**

If you disagree with the commanding officer's disposition, you will have five business days to appeal to the Central Office Review Committee (CORC). The CORC will render a disposition within 15 business days of receiving the appeal. The CORC's disposition constitutes the Department's final decision.

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE AND REQUEST PROGRAM

### DISPOSITION FORM     Attachment - C

Form: # 7102R
Eff.: 09/12/12
Ref.: Dir. #3376

| Grievance/Request Reference #: | Date Filed: | Facility: |
|---|---|---|

| Title of Grievance or Request: | Category: |
|---|---|

From IGRP Inmate Statement Form, print or type short description of request/grievance:

_____

_____

_____

_____

_____

_____

_____

Action Requested by Inmate: _____

_____

_____

_____

_____

**STEP 1: INFORMAL RESOLUTION**

Check one box: ☐ Grievance   ☐ Request   ☐ Submission not subject to the IGRP process.

The Inmate Grievance and Request Program proposes to informally resolve your grievance or request as follows below. Alternatively, IGRP staff shall provide an explanation for why the submission is not subject to the IGRP process.

_____

_____

_____

_____

_____

Are you satisfied with the proposed resolution?

☐ Yes, I accept the resolution.   ☐ No

I request a formal hearing of the Inmate Grievance Resolution Committee within 5 business days from notification of the proposed resolution. I understand that if my submission involves a request to exercise religious beliefs or practices not currently available, then the Committee on Religious Accommodations will review my request

| Inmate's Signature: | Date: | Grievance Supervisor's Signature: | Date: |
|---|---|---|---|

 

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE AND REQUEST PROGRAM
## DISPOSITION FORM

Form: # 7102R
Eff.: XX/XX/12
Ref.: Dir. #3376

If this is a submission not subject to IGRP process, DOC Grievance Supervisor must choose its category and write down the next steps for the inmate.

☐ Staff-on-inmate non-sexual assault (use of force) allegation
☐ Staff-on-inmate sexual assault/abuse allegation
☐ Staff-on-inmate non-sexual harassment
☐ Inmate-on-inmate non-sexual assault allegation
☐ Inmate-on-inmate sexual assault/abuse allegation
☐ Inmate-on-inmate non-sexual harassment allegation
☐ Status as an intended contraband recipient, enhanced restraint, Red ID, or centrally monitored case inmate

☐ Medical staff, e.g., complaints regarding quality of care, request for second medical opinion
☐ Mental health staff, e.g., complaints regarding quality of care, request for second medical opinion
☐ Request for protective custody (fear for safety)
☐ Request for accommodation due to disability
☐ Inmate disciplinary process and dispositions
☐ Freedom of Infomation law request
☐ Other

| Next steps: | Date of Deadline for Status Update from Relevant Entity: |
|---|---|

| Inmate's Signature: | Date: | Grievance Supervisor's Signature: | Date: |
|---|---|---|---|

### STEP 2: FORMAL HEARING OF INMATE GRIEVANCE RESOLUTION COMMITTEE

Formal Hearing Disposition: _____

_____

_____

_____

_____

_____

_____

Date returned to inmate: _____     IGRC Members Signatures: _____

_____

_____

_____

Please decide within five business days of receipt whether to appeal (Check one box below.)

☐ Yes, I agree with the IGRC hearing disposition.

☐ No, I disagree with the IGRC hearing disposition and seek to appeal to the Commanding Officer.

| Inmate's Signature: | Date: | Grievance Supervisor's Signature: | Date: |
|---|---|---|---|

### STEP 3: APPEAL TO THE COMMANDING OFFICER

Grievance Supervisor must check only one box below.

☐ Grievance forwarded to the Commanding Officer for action upon IGRC recommendation.

☐ Grievance not forwarded to the Commanding Officer (explain):

_____

| Grievance Supervisor's Signature: | Date: |
|---|---|

# NEW YORK CITY DEPARTMENT OF CORRECTION

### INTRADEPARTMENTAL MEMORANDUM      Attachment - D

**Date:**

**To:**

**From:**

**Subject:**    INMATE REPORT OF AN ALLEGED ASSAULT/HARASSMENT OR
SEXUAL/PHYSICAL ASSAULT

This memorandum is to inform you that the following inmate contacted the Inmate Grievance
and Request Program (IGRP) office on _____ and informed members of the IGRP that s/he
was (Check all that apply)

☐ **INMATE ON INMATE**          ☐ **STAFF ON INMATE**

☐ **ASSAULT**      ☐ **PHYSICAL ASSAULT**
☐ **HARASSED**     ☐ **SEXUAL ASSAULT**

Inmate Last Name:_____ Inmate First Name:_____

NYSID #:_____ Book and Case #:_____

This information is being forwarded to you because these allegations are not within the
jurisdiction of the IGRP pursuant to Directive 3376, Section IV.B.2.b.).  Please see enclosures.

You may contact the inmate for additional details of the allegation.

_____
, Grievance Supervisor

c: IGRP files

Form 7316R
Eff.: 09/10/12
Ref.: Dir. #3376

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE AND REQUEST PROGRAM
## CODE OF ETHICS AND DUTIES FORM

Form: # 7113R
Eff.: 09/10/12
Ref.: Dir. #3376



**Attachment E**

The Inmate Grievance and Request Program Code of Ethics and duties, applicable to Grievance Supervisors, uniformed staff representatives, inmate grievance representatives, and inmate grievance clerks, strengthens the credibility and effectiveness of the Inmate Grievance and Request Program.

**The Inmate Grievance and Request Program Code of Ethics and duties consists of the following principles:**

A. Members shall not obstruct an inmate from exercising his/her right to file a grievance/request.

B. Members shall demonstrate a willing and tactful attitude in the performance of their duties.

C. Members shall not expect or receive preferential treatment because of his/her participation in the IGRP.

D. Members shall not abuse their particular duties, responsibilities or assignments.

F. Members shall be responsible for the safekeeping of grievance/request files and preventing their unauthorized use.

G. Members shall not intentionally undermine the IGRP's operations or credibility.

H. Members of the IGRP shall have a working knowledge of the program and their responsibilities as members.

I. Members shall not violate Department rules and regulations.

I have read, understood and shall abide by the above Code of Ethics and Duties. My signature below indicates acknowledgement of my right to a due process hearing should I violate any of the above ethics.

| Inmate's Signature : | Date: |
|---|---|
| Grievance Supervisor's or Grievance Officer's Signature : | Date: |

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

| INMATE GRIEVANCE AND REQUEST PROGRAM | Form: # 7114R |
|---|---|
| AUTHORIZATION FOR TIME EXTENSION FORM | Eff.: 09/10/12<br>Ref.: Dir. #3376 |

| Grievance/Request Reference #: | Inmate's Name: | **Attachment F** |
|---|---|---|
| Book & Case #: | NYSID #: | Date: |

The Inmate Grievance and Request Program, the Commanding Officer, or the Central Office Review Committee may request timeframe extensions by which they must complete IGRP tasks, but such extensions may only be granted with the written consent of the inmate.   In addition, an inmate may request timeframe extensions due to a valid reason for a delay in submitting a grievance or request or due to a legitimate and substantiated reason in requesting appeals.  An inmate's request for a timeframe extension may only be granted with the written consent of the Grievance Supervisor.

Please check one box below.  This timeframe extension is requested by:

☐ IGRP staff,

☐ The Commanding Officer,          } **If yes, go to Section B**

☐ The Central Office Review Committee,

☐ Inmate personally involved in this grievance or request. - **If yes, go to Section A**

## SECTION - A

If this request is submitted by an **INMATE**, please check applicable box(es) as the reason for the delay below to provide justification for the timeframe extension.

☐ medical visits

☐ transfer to another facility

☐ transfer to a punitive segregation area or other special population housing area

☐ court appearances

☐ Other - describe:_____

Grievance Supervisor will review this request and justification and will check one box below and provide signature and date.

☐ I reviewed this request and checked on the validity of the delay. I approve the timeframe extension for_____days.

☐ I reviewed this request and checked on the validity of the delay. I reject the timeframe extension for the inmate.

## SECTION - B

If this request is submitted by DOC, IGRP staff should indicate who requested the extension and the justification:

_____

_____

_____

Inmate will review this request and justification and will check one box below and provide signature and date.

☐ I reviewed this request and checked on the validity of the delay. I approve the timeframe extension.

☐ I reviewed this request and checked on the validity of the delay. I reject the timeframe extension.

| Inmate's Signature: | Date: |
|---|---|
| Grievance Supervisor Signature: | Date: |

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

**INMATE GRIEVANCE AND REQUEST PROGRAM**

**GRIEVANCE AND REQUEST INVESTIGATION FORM**

Form: # 7115R
Eff.: 09/10/12
Ref.: Dir. #3376

| Inmate's Name: | Book & Case #: | NYSID #: |
|---|---|---|
| Grievance/Request Reference #: | Facility: | Housing Area: |

Issue:

Action Requested:

Person(s) Contacted:

Statement(s) Provided:

Related Documents:

Conclusion:

| Completed by: | | |
|---|---|---|
| Inmate Grievance Representative (Signature): | Date: | |
| Uniformed Staff Representative (Signature): | Shield: | Date: |
| Grievance Supervisor (Signature): **Attachment G** | Date: | |

## CITY OF NEW YORK - DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE AND REQUEST PROGRAM

### INMATE GRIEVANCE AND RESOLUTION COMMITTEE HEARING NOTICE

Form: # 7103R
Eff.: 09/10/12
Ref.: Dir. #3376

| Inmate's Name: | Book & Case #: | NYSID #: |
|---|---|---|
| Grievance/Request Reference #: | Facility: | Housing Area: |

THE INMATE GRIEVANCE AND RESOLUTION COMMITTEE (IGRC) IS CONDUCTING A HEARING REGARDING YOUR GRIEVANCE/REQUEST. IT IS REQUESTED THAT YOU ATTEND THE HEARING THAT WILL BE CONDUCTED IN AN ATTEMPT TO RESOLVE THE GRIEVANCE/REQUEST.

NAME OF PERSON TO APPEAR:

DATE OF IGRC HEARING:

TIME OF IGRC HEARING:

PLACE OF IGRC HEARING:

PLEASE INDICATE IF YOU WILL BE PRESENT: ☐ YES ☐ NO

If no, please check the appropriate box:

☐ I wish to withdraw grievance or request

☐ Hearing scheduled on court day

☐ Other (specify)

If you do not appear at the **third** scheduled hearing and fail to provide a legitimate and substantiated reason, then the Inmate Grievance Resolution Committee shall hold the hearing in absentia and has the authority to reach a decision or dismiss the grievance or request by majority vote. Refusals by the inmate to attend the hearing must be made to IGRP staff in person and shall be documented.                **Attachment H**

| Inmate's Signature: | Date: | IGRP Staff's Signature: |
|---|---|---|

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

| **INMATE GRIEVANCE AND REQUEST PROGRAM** | Form: # 7104R |
|---|---|
| **COMMANDING OFFICER'S DISPOSITION FORM** | Eff.: 09/10/12 |
| | Ref.: Dir. #3376 |

| Inmate's Name: | Book & Case #: | NYSID #: |
|---|---|---|

| Grievance/Request Reference #: | Date Filed: | Facility: |
|---|---|---|

| Title of Grievance or Request: | Category: |
|---|---|

## COMMANDING OFFICER'S DISPOSITION

The IGRC disposition is:

☐ Accepted          ☐ Rejected

<u>Commanding Officer's Disposition (and Comments):</u>

_____

_____

_____

| Commanding Officer's Signature: | Date: |
|---|---|

## NOTICE TO INMATE

**Check the appropriate box below and provide your signature.**

**You have five days from receipt of this notice to file your appeal.**

☐ I accept the Commanding Officer's disposition and do not wish to appeal to the Central Office Review Committee.

☐ I reject the Commanding Officer's disposition and wish to appeal to the Central Office Review Committee.

**Attachment I**

| Inmate's Signature: | Date: |
|---|---|

| Grievance Supervisor's Signature: | Date: |
|---|---|

# CITY OF NEW YORK - DEPARTMENT OF CORRECTION

## INMATE GRIEVANCE AND REQUEST PROGRAM

### TRANSMITTAL TO CENTRAL OFFICE REVIEW COMMITTEE FORM

Form: # 7105R
Eff.: 09/10/12
Ref.: Dir. #3376

| Inmate's Name: | Book & Case #: | NYSID #: |
|---|---|---|
| Grievance/Request Reference #: | Transmittal Date: | Facility: |

| Title of Grievance or Request: | Category: |
|---|---|

**Grievance or Request Description:**

**IGRC Disposition:**

**Commanding Officer's Disposition:**

| IGRP Executive Director Signature: | Date Prepared: | **Attachment J** |
|---|---|---|

## CITY OF NEW YORK - DEPARTMENT OF CORRECTION

### INMATE GRIEVANCE AND REQUEST PROGRAM

### CENTRAL OFFICE REVIEW COMMITTEE'S DISPOSITION FORM

Form: # 7106R
Eff.: 09/10/12
Ref.: Dir. #3376

| Inmate's Name: | Book & Case #: | NYSID #: |
|---|---|---|
| Grievance/Request Reference #: | Date Filed: | Facility: |

| Title of Grievance or Request: | Category: |
|---|---|

The Commanding Officer's disposition is:

☐ Accepted:          ☐ Rejected:

COMMENTS FROM THE CENTRAL OFFICE REVIEW COMMITTEE

| Associate Commissioner, Programs and Discharge Planning: | Date: |
|---|---|

### APPEAL STATEMENT                    Attachment K

**The decision of the Central Office Review Committee is the final and binding decision of the NYC Department of Correction.  Notice of the decision will be provided to the Board of Correction and the Department Commissioner.  If you disagree with the decision, you may appeal to the Board of Correction independently.**

| Inmate's Signature : | Date: |
|---|---|
| Grievance Supervisor's Signature : | Date: |